SHARON BENSON BLACK v. T. W. LITTLEJOHN, SR., M.D.

No. 196A84

(Filed 30 January 1985)

**Physicians, Surgeons, and Allied Professions § 13— medical malpractice—statute of limitations—meaning of non-apparent injury**

> As used in the discovery exception for non-apparent injuries in the statute of limitations for malpractice actions, G.S. 1-15(c), the term "bodily injury" denotes an awareness by plaintiff that wrongful or negligent conduct was involved in addition to the fact of his or her injury by defendant. Therefore, plaintiff's discovery of defendant's failure to inform her of the availability of a drug as a less drastic alternative to the hysterectomy performed by defendant physician on plaintiff more than two years earlier qualified as discovery of a non-apparent "injury" which comes within the one-year discovery provision of G.S. 1-15(c), and plaintiff's malpractice action was not barred by G.S. 1-15(c) where the complaint was filed within one year after plaintiff discovered defendant's wrongful conduct or negligence and within four years from the last act of defendant when he performed the surgery.

> Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by plaintiff, pursuant to G.S. § 7A-30(2), from a divided panel of the Court of Appeals, *Black v. Littlejohn*, 67 N.C. App. 211, 312 S.E. 2d 909 (1984), affirming an order granting defendant's motion to dismiss, entered by *Beaty, J.*, at the 25 October 1982 Civil Session of Superior Court, FORSYTH County.

*Badgett, Calaway, Phillips, Davis, Stephens, Peed & Brown, by Herman L. Stephens, for plaintiff-appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by J. Robert Elster, Michael L. Robinson, and Jackson N. Steele, for defendant-appellee.*

FRYE, Justice.

On 1 October 1978, defendant, a licensed physician specializing in obstetrics and gynecology, performed surgery on plaintiff. The surgical procedures performed included a total abdominal hysterectomy, a bilateral salpingo oophorectomy, appendectomy and lysis of adhesions. Defendant prescribed and performed the surgery for plaintiff to alleviate and resolve a certain condition diagnosed by defendant as endometriosis. Plaintiff, in her af-

fidavit, stated that defendant told her "he had done everything he could to avoid a hysterectomy and that nothing else would work." On 17 August 1981, plaintiff, who was at that time employed as a medical secretary, changed units on her job. Thereafter, she became aware that a drug called Danocrine was being used to treat endometriosis. In September or October 1981, plaintiff was advised by a doctor and resident where she worked that her hysterectomy "might have been unnecessary." These incidents aroused in plaintiff "some suspicions that Danocrine should have been tried in my case."

Afterwards, plaintiff was again treated for endometriosis by a second doctor, Dr. Jonathan Weston. During July 1982, Dr. Weston prescribed Danocrine to treat plaintiff's condition. Plaintiff called the Food and Drug Administration and learned that the drug had been approved for the treatment of endometriosis on 21 June 1976 and had been available for use by physicians as early as September 1976, a date more than two years before defendant had performed surgery to treat plaintiff's endometriosis. Plaintiff in her affidavit stated that "it was only when I began being treated with Danocrine for my present endometriosis that it was completely apparent to me that my hysterectomy was unnecessary."

On 16 August 1982, plaintiff commenced a medical malpractice action against defendant, alleging lack of informed consent to the surgery performed by defendant. Defendant, in his answer, denied any negligence on his part. He also included in his answer a motion to dismiss, pursuant to Rule 12(b)(6), asserting that the action was barred by the three-year statute of limitations contained in G.S. 1-15(c). The motion to dismiss was allowed by order entered 26 October 1982, dismissing the complaint. Plaintiff timely appealed to the Court of Appeals, and that court affirmed the trial court's dismissal of plaintiff's action.

I.

The issue on this appeal is whether plaintiff's discovery of defendant's failure to inform her of the availability of a drug as a less drastic alternative to the hysterectomy performed by defendant on plaintiff more than two years earlier qualifies as discovery of a non-apparent "injury" that comes within the one-year discovery provision of G.S. 1-15(c). This Court concludes that it does.

The heart of the controversy in this case centers around an interpretation of G.S. 1-15(c), the statute of limitations applicable to professional malpractice actions. That statute states:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action: Provided further, that where damages are sought by reason of a foreign object, which has no therapeutic or diagnostic purpose or effect, having been left in the body, a person seeking damages for malpractice may commence an action therefor within one year after discovery thereof as hereinabove provided, but in no event may the action be commenced more than 10 years from the last act of the defendant giving rise to the cause of action.

It is plaintiff's contention that she suffered from an injury that was not readily apparent at the time of its origin, that is, at the time of the operation on 1 October 1978; and that her discovery of her alleged injury at some point after 17 August 1981, a date more than two years after the surgery, brings her within the second provision of G.S. 1-15(c). If applicable, this portion of the statute would allow plaintiff one year from the date of her discovery of the "injury, loss, defect, or damage" to bring an action for malpractice. Furthermore, plaintiff did commence her action on 16 August 1982, a date within one year after her alleged

discovery, thus satisfying this particular requirement of the statute.

This one-year-from-discovery exception contained within the second provision of G.S. 1-15(c) is subject to a four-year absolute or outer time limit within which plaintiff must bring an action for malpractice. This outer time limit begins with the last act of the defendant giving rise to the cause of action. Since plaintiff commenced her malpractice action on 16 August 1982, or within one year after she allegedly discovered her injury and within four years from the last act of defendant when he performed surgery on 1 October 1978, she contends that the trial court improperly granted defendant's motion to dismiss based upon the three-year statute of limitations contained in G.S. 1-15(c).

The Court of Appeals held that plaintiff's cause of action accrued on 1 October 1978, the date on which defendant performed the surgery on plaintiff, and that her injury was apparent, thus bringing her within the three-year limitation period contained in the first provision of G.S. 1-15(c). That court disagreed with plaintiff's contention that she did not discover her injury until more than two years after the surgery was performed and that she should be allowed to take advantage of the discovery provision for non-apparent injuries within G.S. 1-15(c). The primary reason for the Court of Appeals' refusal to allow plaintiff the additional time afforded by this second provision rests upon that court's interpretation of what the legislature meant by plaintiff's discovery of an "injury, . . . not readily apparent to the claimant at the time of its origin, . . ." Without citation of authority, the Court of Appeals reasoned that the term "injury" should be interpreted as follows:

> The clear purpose of the exception in G.S. 1-15(c) allowing for a four-year limitation period in certain cases is to provide for latent injuries where the physical damage to a prospective plaintiff is not readily apparent, and not for those cases in which the injury is obvious but the alleged negligence of the doctor is not. We do not believe our legislature intended to equate discovery of injury with the discovery of negligence.

67 N.C. App. at 213, 312 S.E. 2d at 911.

Based upon this reasoning, the Court of Appeals determined that plaintiff's "injury" was the removal of her ovaries and other reproductive organs and that she was aware of this "physical injury" from the time of surgery. Therefore, the court concluded, what she did indeed discover on 17 August 1981 was not her injury but defendant's negligence in not advising her of the alleged alternative treatment for her endometriosis. *Black*, 67 N.C. App. 211, 312 S.E. 2d 909.

For reasons to be explained hereinafter, we do not agree with either the holding or rationale espoused by the Court of Appeals.

## II.

Since the term "injury" is not explicitly defined in the statute, it is the task of this Court to ascertain what the legislature intended when it adopted this particular language as part of G.S. 1-15(c). *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975). Certain rules of statutory construction normally serve as aids to this Court in determining legislative intent. One general rule is that the Court looks to the purpose and spirit of the statute and what it sought to accomplish. *In Re Hardy*, 294 N.C. 90, 240 S.E. 2d 367 (1978); *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). Also, it is useful to consider the history and circumstances surrounding the legislation and the reason for its enactment. *Sale v. Johnson*, 258 N.C. 749, 129 S.E. 2d 465 (1963).

In 1975, prior to the adoption of G.S. 1-15(c), a person injured by the negligence of another had two applicable time periods within which to bring an action: 1) G.S. 1-52(5) provided for a three-year period commencing when a cause of action accrued[1] for injuries to the person or right of another; and 2) G.S. 1-15(b) provided for a three-year period for non-apparent injuries commencing with a plaintiff's discovery of an injury but not to exceed ten years from the negligence or last act of defendant. This latter statute, G.S. 1-15(b), was enacted in 1971 to mitigate the some-

---

1. The cause of action was deemed to accrue from the date defendant committed the wrongful act, regardless of the injured party's knowledge that defendant had acted wrongfully. *Wilson v. Development Co.*, 276 N.C. 198, 171 S.E. 2d 873 (1970); *Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508 (1957).

times harsh results of G.S. 1-52. *Williams v. General Motors Corporation*, 393 F. Supp. 387 (M.D.N.C. 1975) (applying North Carolina substantive law). The net effect of G.S. 1-15(b) was to overrule prior case law that had held that a cause of action for medical malpractice "accrues from the date of the wrongful act or omission." *Shearin v. Lloyd*, 246 N.C. 363, 369, 98 S.E. 2d 508, 513 (1957) (plaintiff's cause of action for medical malpractice based on defendant's negligence in leaving a foreign object in plaintiff's body at time of surgery accrued immediately on closing of incision, not when plaintiff discovered the foreign object subsequent to the three-year statute of limitations contained in G.S. 1-52(5) ). The enactment of G.S. 1-15(b) equated to a legislative adoption of the discovery rule. *Johnson v. Podger*, 43 N.C. App. 20, 257 S.E. 2d 684, *cert. denied*, 298 N.C. 806, 261 S.E. 2d 920 (1979).

The enactment of G.S. 1-15(c) developed as part of the North Carolina Medical Malpractice Actions law, which was adopted during a rash of similar legislation enacted by other states during the mid-1970's. *See* N.C. Gen. Stat. §§ 90-21.11-21.14 (1981). Comment, *An Analysis of State Legislative Responses to the Medical Malpractice Crisis*, 1975 Duke L. J. 1417. This process of legislative reform originated with the crisis in the medical profession that revolved around the exorbitant cost of medical malpractice insurance and the dramatic increase in medical malpractice claims. Abraham, *Medical Malpractice Reform: A Preliminary Analysis*, 36 Md. L. Rev. 489 (1977).

In a report submitted to the General Assembly by the commission appointed to study and make certain recommendations regarding the professional malpractice crisis, the most significant recommendation made was to lower the outside time limit to four years for actions based on professional malpractice. North Carolina Professional Liability Insurance Study Commission, Report to the General Assembly of 1976, at 28 (1976) (hereinafter cited as Insurance Study). In other words, the Study Commission suggested that the ten-year outer limit contained in the discovery provision of G.S. 1-15(b) be reduced to four years.

In addition to this decrease in the outer time limit within which a malpractice action could be commenced, it was also recommended that the legislature enact the following provisions: 1) a three-year period that would start to run at the time of the

negligent act for injuries that are ascertainable at that time; and 2) a one-year-from-discovery provision for actions for injuries that are discovered between two and three years after the negligent act, with a requirement that the action be filed within one year from the discovery but subject to an overall four-year outer limit. Insurance Study, at 28. In response to these recommendations, the legislature enacted G.S. 1-15(c), a specific malpractice statute of limitations. *See* 1 D. Louisell and H. Williams, *Medical Malpractice* ¶ 13.02 (1984) (hereinafter cited as Louisell and Williams) (the authors list seven jurisdictions that have failed to enact a specific malpractice statute of limitations).

In addition to the three-year period accruing at the time of the negligent act, our lawmakers chose to include two separate discovery provisions — one for injuries, losses, defects or damages not readily apparent and the other for certain foreign objects left in the body — rather than the exclusive one-year-from-discovery provision with a four-year outer limit recommended by the study commission. Also, the legislature retained the discovery provision of G.S. 1-15(b) for causes of action for bodily injury other than actions for wrongful death and malpractice. Thus, the statute contained a discovery provision for personal injuries, other than malpractice, in G.S. 1-15(b)[2] and the dual discovery provisions for non-apparent injury and foreign objects for professional malpractice actions contained in G.S. 1-15(c). Most significantly, the legislature rejected the commission's recommendation that a four-year outer limit should apply in discovery situations. Instead, a ten-year outer limit was retained for discovery of foreign objects and a four-year outer limit adopted for discovery of non-apparent injury.

The majority of the jurisdictions with malpractice statutes of limitations provide some absolute statutory outer limit similar to that contained in our statute. Prosser and Keaton on Torts § 30 (5th ed. 1984). This outer limit is more precisely referred to as a period of repose. Note, *Medical Malpractice Statute of Repose:*

2. In 1979 the legislature repealed G.S. 1-15(b) and replaced it with G.S. 1-52(16), a discovery provision for personal injury or physical damage to property with a ten-year outer limit for accrual. Consequently, subsection (b) of G.S. 1-15 was replaced by G.S. 1-15(c) containing two discovery provisions for malpractice actions and G.S. 1-52(16) containing a discovery provision for injury, not resulting from malpractice.

*An Unconstitutional Denial of Access to the Courts,* 63 Neb. L. Rev. 150 (1983) (hereinafter cited as *Medical Malpractice*). Unlike an ordinary statute of limitations which begins running upon accrual of the claim (G.S. 1-15(a); *Flippin v. Jarrell,* 301 N.C. 108, 118, 270 S.E. 2d 482, 489 (1980)), the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted. *Medical Malpractice, supra,* at 153; *Bolick v. American Barmag Corp.,* 306 N.C. 364, 366, 293 S.E. 2d 415, 417-18 (1982); Prosser and Keaton on Torts, *supra* § 30. Thus, the repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue, which is generally recognized as the point in time when the elements necessary for a legal wrong coalesce. *Raferty v. William C. Vick Construction Co.,* 291 N.C. 180, 186, 230 S.E. 2d 405, 408 (1976); *Developments in the Law—Statutes of Limitations,* 63 Harv. L. Rev. 1177, 1200 (1950); S. Speiser, C. Krause and A. Gans, I *The American Law of Torts* § 5:27 (1983) (hereinafter cited as *Law of Torts*).

The legislature's adoption of an outer limit or repose of four years from the last act of the defendant giving rise to the cause of action for non-apparent injuries contained in G.S. 1-15(c) and the ten-year period of repose for discovery of foreign objects clearly have the effect of granting the defendant an immunity to actions for malpractice after the applicable period of time has elapsed. *Medical Malpractice, supra,* at 154; J. Dooley, *Modern Tort Law* § 34.74-76 (1983); *see* Note, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?* 43 U. Pitt. L. Rev. 501 (1982) (the author recognizes the tendencies of states to whittle away the discovery rule by coupling with it a statute of repose, creating an "outer cut-off date from the time of the wrongful act." *Id.* at 521). The enactment of an outer limit seems consistent with the purpose and spirit of the medical malpractice act, that is, to decrease the number and severity of medical malpractice claims in an effort to decrease the cost of medical malpractice insurance. Abraham, *supra* at 489; Insurance Study, *supra* at 3.

As enacted, G.S. 1-15(c) provides for a minimum three-year period from occurrence of the last act;[3] an additional one-year-from-discovery period for injuries "not readily apparent" subject to a four-year period of repose commencing with defendant's last act giving rise to the cause of action; and an additional one-year-from-discovery period for foreign objects subject to a ten-year period of repose again commencing with the last act of defendant giving rise to the cause of action. The enactment of the statute, providing for three distinct situations in which the time limitations can be applied in malpractice actions, also reflects the legislature's consideration for the conflicting policies of statutes of limitation in general:

> On the one hand, there are the policies of discouraging stale and fraudulent claims where the loss of evidence makes the case difficult, more costly, or impossible to prove, and of providing some absolute time limit (beyond which the plaintiff would be completely barred under all circumstances from bringing suit) so that the defendant can rest easy with the assurance that he will not be unexpectedly surprised by an old claim. On the other hand, there is also strong policy in favor of allowing a potential plaintiff, who has been as diligent as possible in discovering and bringing his meritorious claim to trial, to have access to the machinery of the courts so that he may seek redress for the wrongs committed against him.

Medical Malpractice, *supra*, at 163.

In gleaning the intent of the legislature from the purpose, spirit, and history of the legislation, we attach significance to the fact that our lawmakers chose to include two separate discovery provisions, contrary to one, as recommended by the Study Commission. These two discovery provisions tend to achieve the purpose of avoiding the obvious injustice and harshness of the

---

3. The case of *Wilcox v. Plummer*, 29 U.S. (4 Pet.) 172 (1830), which originated in North Carolina, is generally cited as authority for this rule. This case arose in the context of a legal malpractice action and stands for the proposition that regardless of when legal injury or damages arise, the occurrence of the negligent act by defendant triggers accrual of the statute of limitations. *See generally*, Ellis, *Malpractice Accrual: Adherence to the Common Law in Professional Negligence Actions*, 19 Idaho L. Rev. 63, 68 (1983) (contains a discussion of the impact of *Wilcox* and its misplaced application in the field of professional malpractice).

"occurrence" of the last act accrual period contained in the three-year period of limitation. *See* Note, *Statutes of Limitations—Medical Malpractice—When a Cause of Action Accrues for Limitations Purposes: A Discovery Rule*, 6 Wake Forest Intra. L. Rev. 532 (1970).[4] They also strike a delicate balance between the rights of the diligent plaintiff who should not be barred from pursuing a meritorious claim and the defendant who deserves protection from stale claims after a viable defense may be weakened because of dead witnesses or forgotten facts. In essence, the intended purpose of the statute is achieved by stimulating activity and punishing neglect. *Anderson v. Shook*, 333 N.W. 2d 708, 712 (N.D. 1983).

Although the statutory or judicial adoption of a discovery provision is the trend in most jurisdictions (Soneshein, *A Discovery Rule in Medical Malpractice: Massachusetts Joins the Fold*, 3 W. New Eng. L. Rev. 433 (1981) ), the discovery rule for foreign objects is the only recognized exception in many jurisdictions. J. Dooley, *supra* § 34.80; Louisell and Williams, *supra*, ¶ 3.06-.07. This restrictive view has been criticized and explicitly rejected by some courts. For instance, in *Carson v. Maurer*, 424 A. 2d 825 (N.H. 1980), the statute of limitations for medical malpractice actions contained a discovery provision only for foreign objects. The Supreme Court of New Hampshire stated that the statute was constitutionally "invalid insofar as it makes the discovery rule unavailable to all medical malpractice plaintiffs except those whose actions are based upon discovery of a foreign object in the injured person's body." *Id.* at 833; *see* J. Dooley, *supra* § 34.80.

Thus, our statute affords plaintiffs two, not one, alternatives or exceptions to the "occurrence" of the last act accrual rule. This adherence to the discovery doctrine in both non-apparent injury and foreign object situations reflects an intent on the part of the General Assembly to preserve the plaintiff's cause of action in

---

4. The student author discusses G.S. §§ 1-52(5) and 1-15, the statutes of limitations applicable to malpractice claims in effect at that time, which required that actions be brought within three years after the last act of negligence by defendant. North Carolina had not at that time adopted any discovery provision. The author strongly advocated the merits of such a rule and argued for its adoption by the courts in the state. G.S. § 1-15(b) was subsequently enacted in 1971 and statutorily created such a discovery rule.

medical malpractice cases, particularly when the defendant's wrongdoing is not known to plaintiff at the time of defendant's last act. Another action on the part of the legislature that tends to reflect its intent is its rejection of the Commission's recommendation that the overall outer limit on the statutes of limitations be reduced to four years. Instead, the legislature chose to maintain a ten-year outer limit for discovery of foreign objects.

A plausible rationale for the General Assembly's actions that further tends to demonstrate its intent can perhaps be explained as follows:

> The reason that state after state has changed its basic law and policy as to limitation of actions, particularly in reference to malpractice cases, and adopted the discovery doctrine is that the former rule defining the time of accrual of the action as the date on which medical negligence occurred led frequently to harsh consequences for seriously injured plaintiffs, sometimes amounting to total deprivation of legal remedy. The obvious injustice that so often flowed from the application of the old rule disturbed the conscience and the sense of fairness in both legislators and the judiciary. And after a lengthy tug-of-war in several states as to who should take final and decisive action to make the needed change, the legislature in most states passed the necessary legislation—if they did not, the courts did so by expressly overruling older cases and setting forth the new doctrine. At present there remain only a few jurisdictions in which the date-of-negligent-act still constitutes the time of accrual of the action. And [it] is only in these jurisdictions that a patient severely injured by purported health care treatment is required, under penalty of losing all redress, to institute a malpractice action before he knows that he is a victim of negligence or indeed that he has been injured at all. Unless these unfortunate patients learn of their injury and its cause before the limitation period has expired, they find themselves, without any fault of their own, without a remedy. The opinions of courts in states that still apply the strict rule are often so worded as to show clearly that judges dislike and disapprove of enforcing the rule. They do so reluctantly, either on the theory that it is the duty of the legislature, not the courts to legislate, or on the theory that the fundamental

purpose of all statutes of limitation is to achieve justice by preventing stale claims and by putting a final end to potential litigation, even though in individual cases this may lead to injustice. (footnote citations omitted).

Louisell and Williams, *supra,* ¶ 13.20- .22.

When the discovery rule within G.S. § 1-15(c) was coupled with an outer limit from the last act of defendant giving rise to the cause of action, the legislature wisely effectuated a compromise to balance the needs of the malpractice victims and those of health care providers and insurers. Thus, it seems contrary to the intent of the legislature to deny plaintiff a remedy for her alleged medical malpractice cause of action, if, as she contends, "plaintiff did not reasonably discover the availability of alternative treatment and therapies of which she alleged defendant negligently failed to advise her and which she alleged defendant negligently failed to utilize in her treatment until two or more years after the October 1, 1978, surgery, . . ." We conclude that the General Assembly, by including separate discovery provisions for both non-apparent injury and foreign objects and retaining the ten-year outer limit for discovery of foreign objects rather than reducing it to four years as recommended by the Commission, intended that claimants be given the maximum opportunity in delayed discovery situations to pursue their cause of action subject to the outer time limits in the statute. Thus, this Court's next task is to define plaintiff's "injury" and to determine whether it was readily apparent at the time of its origin.

### III.

The question of whether plaintiff's cause of action for malpractice comes within the one-year-from-discovery provision for non-apparent injuries rests upon a judicial interpretation of the language contained in that provision. It states:

Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property *which originates under circumstances making the injury,* loss, defect or damage *not readily apparent to the claimant at the time of its origin, and the injury,* loss, defect or damage *is discovered or should reasonably be discovered by the claimant* two or more years after the occurrence of

the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years.

N.C. Gen. Stat. § 1-15(c) (emphasis added).

The pivotal language for purposes of this appeal is the term "injury." Plaintiff contends that her belated discovery (more than two years after the operation) of defendant's negligent failure to advise her of the availability of alternative treatments for her condition constitutes the discovery of her "injury." The Court of Appeals disagreed with this position. In rejecting plaintiff's contention, the Court of Appeals determined that "injury" meant latent injury where physical damage is not readily apparent and that "the discovery of injury" does not equate to "the discovery of negligence." We do not agree with the Court of Appeals' definition of injury.

While adhering to the same principles of statutory interpretation mentioned previously, we recognize certain additional principles that serve as guidelines for interpreting ambiguous language contained in a statute. Usually, words of a statute will be given their natural, approved, and recognized meaning. *In Re Appeal of Martin*, 286 N.C. 66, 209 S.E. 2d 766 (1974). To determine the intended meaning of the language, courts may resort to dictionaries to determine definitions of words within statutes. *State v. Martin*, 7 N.C. App. 532, 173 S.E. 2d 47 (1970). In Webster's Third New International Dictionary (1971) there are several definitions of injury. Defined within a legal context, which seems most appropriate for our purposes, injury means "a violation of another's rights for which the law allows an action to recover damages or specific property or both: an actionable wrong. . . ."

Standing alone, this definition seems to support plaintiff's position that at the time of her surgery it was not readily apparent to her that she had suffered any "actionable wrong" or violation of her rights. Not until more than two years after her hysterectomy did she actually discover that the defendant violated her rights. It was at this point that she became aware of her alleged cause of action or actionable wrong, that is, the

negligence of defendant in failing to advise her of possible alternatives to the drastic surgical procedure performed by defendant. At the very least, this definition seems to refute the Court of Appeals' interpretation that only latent injuries with non-apparent physical damage are covered within this proviso.

An additional principle of statutory construction recognizes that "when a term has long-standing legal significance, it is presumed that legislators intended the same significance to attach by use of that term, absent indications to the contrary, . . ." *Sheffield v. Consolidated Foods*, 302 N.C. 403, 276 S.E. 2d 422 (1981). Intertwined with this same principle is the general rule that "when technical terms or terms of art are used in a statute they are presumed to have been used with their technical meaning in mind, absent a legislative intent to the contrary." *In Re Appeal of Martin*, 286 N.C. at 77-78, 209 S.E. 2d at 744 (1974). Within the legal field, the term injury does indeed possess legal significance and is considered to be a term of art. *Larcher v. Wanless*, 18 Cal. 3d 646, 655-56, 135 Cal. Rptr. 75, 80, 557 P. 2d 507, 512 (1976); *see also Christ v. Lipsitz*, 99 Cal. App. 3rd 894, 160 Cal. Rptr. 498 (1979); *Tresemer v. Barke*, 86 Cal. App. 3d 656, 150 Cal. Rptr. 384 (1978). Within the Restatement (Second) of Torts, "injury" is described as the invasion of any legally protected interest of another. *Id.* § 7 comment a (1965). "Where there is an invasion of another's right, the cause of action is the wrong, technically called 'the injury,' which entitles [plaintiff] to at least nominal recompense to vindicate his right. The consequences which immediately flow from that injury, in the way of loss or damage, are but matters of aggravation." E. Hightower, *North Carolina—Law of Damages* § 1-5 (1981). Thus, plaintiff's injury is the wrong entitling plaintiff to commence a cause of action. Until plaintiff discovers the wrongful conduct of defendant, she is unaware that she has been injured in the legal sense.

Courts in other jurisdictions have adopted definitions of the term injury in the discovery provisions of their statutes, which generally comport with the view adopted herein, that is, a statute of limitations should not begin running against plaintiff until plaintiff has knowledge that a wrong has been inflicted upon him. The numerous interpretations of the term seem to possess at least one common denominator, that is, injury generally equates to negligence or breach of duty. *Jacob v. Kaiser Foundation*

*Hospital,* 622 P. 2d 613 (Hawaii Ct. App. 1981) (discovery of the injury occurs when plaintiff discovers damage, violation of duty, and the causal connection between the violation of the duty and the damage); *Lutes v. Farley,* 113 Ill. App. 3d 113, 68 Ill. Dec. 695, 446 N.E. 2d 866 (1983) (injury within the discovery provision means plaintiff knows of his injury and that it was wrongfully caused); *Carson v. Maurer,* 424 A. 2d 825 (N.H. 1980) (discovery rule requires that plaintiff discover both the fact he is injured and the cause thereof); *Hoffman v. Hospital Affiliates, Inc.,* 652 S.W. 2d 341 (Tenn. 1983) (injury discovered when plaintiff discovers he has a right of action); *Foil v. Ballinger,* 601 P. 2d 144 (Utah 1979) (injury within the discovery provision equates to "legal injury"); *Wood v. Gibbons,* 38 Wash. App. 343, 685 P. 2d 619 (1984) (discovery of injury equates to plaintiff's discovery of his cause of action).

The issue faced by this Court in interpreting the term injury in the discovery provision of G.S. 1-15(c) is not unique or novel. *See* 4 Am. Jur. Trials, *Statutes of Limitations* § 17 (1966). The determination of a certain factual situation that must be discovered before the discovery rule is triggered has caused courts to adopt one of several positions. Louisell and Williams, *supra* ¶ 13.07. It has been recognized, however, that in the discovery of injury situations the better reasoned cases have held that the period of limitation begins to run "only when the plaintiff is definitely aware of an injury which may form the basis for litigation." 4 Am. Jur. Trials, *supra* § 17.

The highest court of Illinois engaged in a similar interpretation of "injury" contained in that state's medical malpractice statute of limitations. In *Witherell v. Weimer,* 85 Ill. 2d 146, 421 N.E. 2d 869 (1981) plaintiff began experiencing physical pain and spasms in her left leg shortly after first taking Ortho-Novum, a brand of birth control pills, prescribed by one defendant doctor. Defendants continued to reassure her that the pills were not the cause of her symptoms and that there was nothing wrong with the veins in her legs. Plaintiff was hospitalized by defendants on three separate occasions, but the painful symptoms in her legs continued. Her last treatment by defendant doctors was in May 1976.

On 22 May 1976, plaintiff went to another doctor who diagnosed her condition as thrombophlebitis, which could have

been caused by the birth control pills. This doctor directed plaintiff to stop taking the pills. Plaintiff commenced her action on 4 January 1978, within two years after she learned that the birth control pills could have been the cause of her painful physical condition and clearly within four years of the last treatment by defendant doctors. In her complaint, plaintiff alleged *inter alia*, that defendants were negligent in failing to discontinue the prescriptions for birth control pills when they were the likely cause of her thrombophlebitis. Defendants' motions to dismiss the actions against them based upon the applicable statutes of limitations were granted by the trial court. On appeal, the supreme court concluded that plaintiff's cause of action against defendant doctors was not barred by the statute of limitations.

One of the issues to be resolved by that state's highest court was when the statute of limitations began running against plaintiff. The applicable statute of limitations for medical malpractice in Illinois required that plaintiff bring the action within two years after claimant "knew, or through the use of reasonable diligence should have known, . . . of the existence of the *injury* . . . , but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." *Id.* at 153, 421 N.E. 2d at 271. The Court acknowledged that the legislature, in response to the medical malpractice crisis, amended the statute of limitations to include the discovery rule. It was also recognized that the term "injury" as used in the statute had been the subject of varying interpretations and that the supreme court had not resolved the question of "whether the statute is triggered by plaintiff's discovery of the injury or not until discovery of the negligence where, as alleged here, knowledge of the injury substantially precedes knowledge of its cause." *Id.* at 155, 421 N.E. 2d at 874. The court defined the term "injury" as used in the statute and how the plaintiff's awareness of an injury triggers the statute. "The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Id.* at 156, 421 N.E. 2d at 874. The court applied this rule by reviewing the facts to determine when plaintiff reasonably should have known that her injury was wrongfully caused.

The court's interpretation of the term "injury" in Illinois' medical malpractice statute of limitations indicates that a person's physical manifestations of painful symptoms can often precede any awareness by the plaintiff that negligence or wrongful conduct on the part of defendant may have been involved. In the case *sub judice,* plaintiff, although well aware of the removal of her reproductive organs and the physical trauma to her body, did not become aware that the defendant may have performed the surgery and inflicted such trauma unnecessarily. As the plaintiff in *Witherell* was aware of the physical symptoms in her legs shortly after defendant began prescribing birth control pills for her, so too did plaintiff in the instant case know of her physical symptoms when defendant treated her by performing surgery. However, in *Witherell* it was not until years later that plaintiff discovered that defendants may have wrongfully caused her physical symptoms by failing to discontinue the prescription for the birth control pills, thus equating to what can be described as wrongful conduct or negligence. Similarly, in the instant case, it was not until more than two years after the surgery that plaintiff discovered that defendant may have wrongfully subjected her to the physical trauma resulting from the surgery by failing to inform her of the availability of alternative drug therapy, thus equating to the same wrongful conduct or negligence as was present in *Witherell.*

The United States Supreme Court recognized that "[s]tatutes of limitation always have vexed the philosophical mind for it is difficult to fit them into a completely logical and symmetrical system of law." *Chase Securities Corporation v. Donaldson,* 325 U.S. 304, 313, *reh'g denied,* 325 U.S. 896 (1945). As Justice Holmes wisely observed, "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425 (1918). We view this Court's interpretation of the term injury within the discovery provision of our statute to be consistent with the intent of the legislature and also consistent with the general statement of the judicially created discovery rule, that is, the statute does not begin to run until plaintiff discovers, or in the exercise of reasonable care, should have discovered, that he was injured as a result of defendant's wrongdoing. *See, Lewey v. Frick Coke Co.,*

166 Pa. 536, 31 A. 261 (1895) (one of the earliest reported decisions judicially adopting the discovery rule); J. Dooley, *supra* § 34.80; Note, *Statutes of Limitations and the Discovery Rule in Latent Injury Claims: An Exception or the Law?* 43 Univ. Pitt. L. Rev. 501, 518 (1982).

Aside from the statutory interpretation of injury, the manner in which courts in other jurisdictions have interpreted their version of the discovery rule further persuades this Court that injury should be defined in a way that "avoid[s] the unfairness of interpreting a statute of limitations to accrue when the injury first occurs, if at the time plaintiff does not have enough information to bring suit." *Dawson v. Eli Lilly Co.*, 543 F. Supp. 1330, 1338 (D.D.C. 1982). In *Dawson*, the District of Columbia's discovery rule was interpreted and applied in plaintiff's product liability suit against the manufacturers of the drug diethylstilbestrol (DES).[5] Plaintiff's mother had taken DES during the time she was pregnant with plaintiff. In 1973, at the age of seventeen, plaintiff was diagnosed as having cervical adenosis and was aware at that time of a possible connection between DES and her condition. However, plaintiff was not aware until 1980 that defendants had marketed the drug without adequate testing as to its safety. Plaintiff commenced her suit in 1981.

The District of Columbia had a three-year statute of limitations for personal injury actions at the time plaintiff began her action. Defendants argued that when plaintiff reached the age of majority in 1976, the statute began to run because plaintiff knew of her injury and its connection to DES. Plaintiff argued that her knowledge of her injury and its cause was insufficient to commence the running of the limitations. She further argued that knowledge of defendant's wrongful conduct in 1980 was necessary to begin the statute running. The court responded as follows:

[1] The parties agree, although they differ as to its requirements, that a "discovery" rule applies to this action under District of Columbia law. That is, the cause of action accrues for limitations purposes not when the injury first occurred, (here, in plaintiff's gestational period), but when plain-

---

5. We note that the District of Columbia did not have a statute of repose for product liability cases, *e.g.*, N.C. Gen. Stat. § 1-50(6) (creating an outer limit of six years after the date of initial purchase for use or consumption to file suit).

tiff discovered, or by the exercise of due diligence should have discovered, the facts giving rise to her claim. (citations omitted).

*Id.* at 1333.

The court reviewed both products liability and medical malpractice cases from other jurisdictions in its attempt to define what it is precisely that plaintiff must discover before the time begins running for limitations purposes. The court stated:

Although the question has not been precisely raised or addressed by the District of Columbia courts, several other jurisdictions have held that knowledge or imputed knowledge of wrongdoing, (although not necessarily legal liability), on the part of defendant is necessary to the accrual of an action under a discovery rule. Especially in the medical field, plaintiffs may lack the expertise to know whether the ill effects they have suffered are a result of someone's wrongdoing, or merely an unexpected result, or inevitable or unforeseeable risk of their treatment. Since the purpose of a discovery rule is to prevent the accrual of a cause of action before a plaintiff can reasonably be expected to know that he has a cause of action, the statute should not begin to run until he knows, or through the exercise of due diligence, should know, that his injury is the result of someone's wrongdoing.

*Id.* at 1334.

The court recognized that in many jurisdictions, some with statutes of limitations exclusively for medical malpractice, the discovery rule is applied in factual situations that involve plaintiff's discovery that an injury was the result of defendant's conduct or product. In those jurisdictions, the court surmised that the discovery rule requires that the plaintiff know of defendant's wrongdoing or actionable conduct in addition to the fact of his injury by defendant. After surveying the varying applications of the discovery rule by courts in other jurisdictions, the court concluded that the facts before it could fit within the application of the District of Columbia discovery rule. Respecting the application of the rule in distinguishable factual situations, the court observed:

In general, discovery rules are adopted to avoid the unfairness of interpreting a statute of limitations to accrue when the injury first occurs, if at that time plaintiff does not have enough information to bring suit. This policy is applied to different factual situations as they arise. Where the injury is latent, the claim is held not to accrue until the plaintiff discovers the injury. Where causation of an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered. *Where the injury and causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing.* We believe the District of Columbia courts would follow this progression. While few courts have forthrightly rejected some or all of these interpretations of the discovery rule, most have at least phrased their discovery rules in a manner that could allow such interpretations should an appropriate case arise.

*Id.* at 1338 (emphasis added).

Following the reasoning of the court in *Dawson,* it seems evident that discovery rules are capable of being construed broadly to comport with the policy of fairness to plaintiffs who are unaware that they have been injured in a legal sense. Not wishing to narrowly construe our particular discovery provision, *Dawson* persuades us that plaintiff's case is an appropriate one to interpret the discovery rule in a manner that effectuates both the policy and purpose behind such a rule. The plaintiff in the instant case, as the plaintiff in *Dawson,* was well aware of her injury (if injury in a purely physical sense were the intended meaning). Plaintiff knew that the removal of her reproductive organs was caused by the defendant's performance of surgery, just as the plaintiff in *Dawson* knew that DES was the possible cause of her cervical adenosis. However, neither plaintiff was aware, until years after any physical symptoms had occurred, that any negligence or wrongdoing was involved. Therefore, the ratio decidendi of the *Dawson* court further supports our conclusion that the one-year-from-discovery provision in G.S. 1-15(c) can and should be interpreted to include an awareness by plaintiff that wrongful or negligent conduct was involved.

Additionally, the Court of Appeals rejected plaintiff's argument that her injury originated under circumstances making the injury not apparent at the time it occurred. The court set forth the following sentence to support its denial of plaintiff's contention: "At any point before or after her surgery, plaintiff through the use of reasonable diligence could have obtained a second medical opinion as to possible alternative treatments for her condition, and thus discovered the defendant's alleged negligence." *Black*, 67 N.C. App. at 213, 312 S.E. 2d at 911. This language implicitly indicates that the court determined that plaintiff was under an affirmative duty to act by seeking a second medical opinion and that her failure to do so caused the injury to be non-apparent at the time of the surgery. We disagree.

The relationship of patient and physician is generally considered a fiduciary one, imposing upon the physician the duty of good faith and fair dealing. 61 Am. Jur. 2d, *Physicians, Surgeons, and Other Health Healers* § 166 (1981). This special relationship envisions an expectation by both parties that the patient will rely upon the judgment and expertise of the doctor. *Witherell*, 85 Ill. 2d 146, 421 N.E. 2d 869. Furthermore, this relation is predicated on the fundamental proposition that the physician possesses "special knowledge and skill in diagnosing and treating diseases and injuries, which the patient lacks, and that the patient has sought and obtained the services of the physician because of such special knowledge and skill." 61 Am. Jur. 2d, *supra,* § 167.

Plaintiff, who stated in her affidavit that she was not aware of defendant's alleged wrongful conduct until more than two years after the surgery was performed, was not required as a matter of law to expedite her discovery of defendant's alleged negligence by seeking a second medical opinion before or after surgery. Therefore, her injury was not readily apparent until her subsequent discovery of defendant's wrongful conduct.

Accordingly, we hold that bodily "injury," as used in the one-year-from-discovery provision of G.S. 1-15(c) and as applied in the factual circumstances of this case, denotes bodily injury resulting from wrongful conduct in a legal sense. For the reasons stated above, we conclude that plaintiff's cause of action falls within the one-year-from-discovery provision of G.S. 1-15(c) because plaintiff was not aware of defendant's wrongful conduct or alleged

negligence in failing to inform her of alternative drug therapies, and that such wrongful conduct was not readily apparent at the time of surgery but was discovered more than two years thereafter. Since plaintiff timely filed her complaint within one year after discovering defendant's wrongful conduct or negligence, well within the four-year outer limit, her cause of action should not be dismissed.

The decision of the Court of Appeals is reversed and the cause is remanded to the Court of Appeals for remand to the Superior Court, Forsyth County, for proceedings consistent with this opinion.

Reversed and remanded.

Justice VAUGHN did not participate in the consideration or decision of this case.