JAMES ROBERT HUSSEY AND EVA LEE BROWN HUSSEY, PLAINTIFFS v. MONTGOMERY MEMORIAL HOSPITAL, INC., DEFENDANT

No. 9319SC363

(Filed 5 April 1994)

**Limitations, Repose, and Laches § 22 (NCI4th) — medical malpractice — brain damage from fall — accrual**

The trial court properly granted defendant's motion for summary judgment based on the statute of limitations where plaintiff husband was taken to defendant hospital on 14 June 1986; he was seated on a gurney without side rails in the emergency room; he fell from the gurney shortly thereafter and was rendered unconscious; the side of his head looked as if it had been severely beaten, his right eye and the right side of his face and head were swollen, he was comatose and totally unresponsive, and he was having continuous seizures; plaintiff's wife was advised in the emergency room that her

HUSSEY v. MONTGOMERY MEMORIAL HOSP.

[114 N.C. App. 223 (1994)]

husband's condition was caused by a lot of swelling in the brain that resulted from striking his head on the floor; plaintiffs allege that they questioned the attending doctor as to whether plaintiff husband had suffered permanent brain damage or injury during the ten-day period after the fall and again in July and were told that there was not and had not been any brain damage or injury; plaintiff continued to see medical providers for the next three and one-half years, but no doctor ever disclosed a brain injury; tests in a psychiatric ward in April of 1990 disclosed permanent and residual brain impairment; plaintiffs first instituted this action on 12 June 1990, voluntarily dismissed it, and refiled on 7 October 1992; and the court granted defendant's judgment based on the statute of limitations. The head injury was not latent; upon falling from the gurney, plaintiff suffered a severe head injury, was rendered unconscious and a treating physician in the emergency room advised plaintiff that her husband's condition was caused by swelling in the brain from striking his head on the floor. It was apparent that there had been wrongdoing most likely attributable to defendant hospital on the date of the fall.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 319, 321.**

**When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.**

Appeal by plaintiffs from order entered 22 January 1993 by Judge Judson D. DeRamus in Montgomery County Superior Court. Heard in the Court of Appeals 1 February 1994.

*Wishart, Norris, Henninger & Pittman, P. A., by William H. Elam and Daniel C. Marks, for plaintiffs-appellants.*

*Elrod & Lawing, P. A., by Sally A. Lawing, of counsel, for defendant-appellee.*

JOHNSON, Judge.

This appeal involves an action brought by plaintiffs, husband James Robert Hussey and wife Eva Lee Brown Hussey, against defendant Montgomery Memorial Hospital, Inc., alleging that de-

**HUSSEY v. MONTGOMERY MEMORIAL HOSP.**

[114 N.C. App. 223 (1994)]

fendant's negligence resulted in permanent brain damage to plaintiff husband when he fell from a gurney (a stretcher with wheels) at defendant hospital.

Plaintiff husband's fall occurred on 14 June 1986. On that date, plaintiff husband had been ill and was taken to defendant hospital by plaintiff wife; upon his arrival, he was seated on a gurney in the emergency room. The gurney had no side rails. Shortly thereafter, plaintiff husband fell from the gurney, was rendered unconscious, and suffered "severe head injury." The right side of plaintiff husband's head looked like it had been severely beaten, and his right eye and the side of his face and head were swollen. Plaintiff husband was comatose, totally unresponsive, and was having "continuous seizures."

Plaintiff husband was treated by a physician in the emergency room who advised plaintiff wife that her husband's condition was caused by "a lot of swelling in the brain" that resulted from striking his head on the floor. Plaintiff husband was moved by ambulance to another hospital, where he was diagnosed with a dislocated clavicle and laceration of the skin and two fractures of the lateral wall of the right orbit. Plaintiff husband underwent surgery for the dislocated clavicle and when he was discharged from the hospital on 23 June 1986 had "significant memory loss" and was nervous, depressed, moody and easily upset.

Plaintiffs allege that during the ten day period after the fall and again on 10 July 1986, they questioned the attending doctor, Dr. Ellen Andrews, as to whether plaintiff husband had suffered permanent brain damage or injury, and that on each occasion, Dr. Andrews answered that there was not and would not be any brain damage or injury. Two months after the fall, plaintiffs consulted with an attorney concerning a possible claim against defendant hospital, but plaintiffs decided not to pursue a lawsuit at that time because they feared doing so might impair plaintiff husband's ability to receive medical treatment.

For the next three and one-half years, plaintiff husband continued to see his medical providers. Plaintiff husband was kept on medication for his nerves, and no doctor ever disclosed to plaintiffs that plaintiff husband had suffered a brain injury or that he may suffer permanent brain impairment.

In April of 1990, plaintiff husband's behavior became severely erratic and unpredictable to the point that plaintiff wife took her husband to Sandhills Center for Mental Health, Mental Retardation and Substance Abuse, a division of the North Carolina Mental Health Department. Plaintiff husband was examined there and transferred to the Dartmouth Clinic, the psychiatric ward at Moore Regional Hospital at Pinehurst. After a series of psychological tests, Dr. Fred Lee, Ph.D. informed plaintiffs that the test results indicated "permanent and residual brain impairment."

On 12 June 1990, plaintiffs first instituted this action by filing their complaint alleging negligence against defendant hospital; defendant filed a motion to dismiss on the grounds that the action was barred by the three-year statute of limitations. Defendant's motion to dismiss was denied "without prejudice to the defendants' right to renew their motion to dismiss on the basis of the statute of limitations at the close of discovery." Plaintiffs voluntarily dismissed the action on 7 October 1991, and refiled the lawsuit on 7 October 1992. Defendant filed answer on 2 November 1992, again arguing that the action was barred by the applicable statute of limitations. On 22 December 1992, defendant filed a motion for summary judgment seeking dismissal of the complaint on the grounds of the expiration of the statute of limitations. The trial judge granted defendant's motion for summary judgment, and plaintiffs filed timely notice of appeal to this Court.

Plaintiffs argue that the trial judge created reversible error in finding that plaintiffs' action was barred by the applicable statute of limitations provision of North Carolina General Statutes § 1-15(c) (1983) on the ground that plaintiffs' claims were timely filed within the provisions of said statute.

North Carolina General Statutes § 1-15(c) states in pertinent part:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person . . . which originates under circumstances making the injury . . . not readily apparent to the claimant at the time of its origin, and the injury . . . is discovered or should reasonably be discovered by

the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.] . . .

Plaintiffs argue that plaintiff husband suffered a bodily injury that was not "readily apparent" at the time of its origin, i.e., the permanent brain injury; that plaintiffs had no knowledge of this specific injury until May of 1990, a date more than two years after plaintiff husband's fall at defendant hospital; that plaintiffs then statutorily commenced the suit within one year from the time this discovery was made; and that plaintiffs complied with the statutory four-year limitation on commencement of a suit by filing the suit within four years from the last act of defendant.

Defendant argues that plaintiffs' cause of action accrued on 14 June 1986, the date of plaintiff husband's fall, because on that date injury to plaintiff husband was "immediately and graphically apparent." Defendant asserts that the "discovery provision" in North Carolina General Statutes § 1-15(c), deferring accrual of professional malpractice claims in circumstances where no injury is "readily apparent" at the time of a defendant's negligent conduct, does not apply in the case *sub judice* because injury was immediately apparent on the day of the fall.

In *Black v. Littlejohn*, 312 N.C. 626, 325 S.E.2d 469 (1985), our Supreme Court interpreted North Carolina General Statutes § 1-15(c), specifically determining what the word "injury" in the statute meant. The Court opined, "[w]e view this Court's interpretation of the term injury within the discovery provision of our statute to be consistent with the intent of the legislature and also consistent with the general statement of the judicially created discovery rule, that is, the statute does not begin to run until plaintiff discovers, or in the exercise of reasonable care, should have discovered, that he was injured as a result of defendant's wrongdoing." *Id.* at 642, 325 S.E.2d at 480. The Court quoted at length from *Dawson v. Eli Lilly and Co.*, 543 F. Supp. 1330, 1338 (D.D.C. 1982):

Where the injury is latent, the claim is held not to accrue until the plaintiff discovers the injury. Where causation of

an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered. *Where the injury and causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing.*

*Black*, 312 N.C. at 645, 325 S.E.2d at 481-82 (emphasis retained).

With *Black* as our guide, we have examined the applicable facts in the instant case, and find that the statute of limitations accrued on 14 June 1986, the date of plaintiff husband's fall. The head injury in the instant case was not latent. We acknowledge that plaintiffs questioned hospital personnel on occasions immediately after the fall to attempt to ascertain the *extent* of plaintiff husband's injuries, and that on those occasions, plaintiffs were told by hospital personnel that there was not and would not be any brain damage or injury. Nonetheless, plaintiff husband had a cause of action on the date he fell from the gurney. Upon falling from the gurney, plaintiff husband suffered severe head injury and was rendered unconscious. A treating physician in the emergency room advised plaintiff wife that her husband's condition was caused by "a lot of swelling in the brain" that resulted from striking his head on the floor. The probable cause of the accident was defendant hospital's negligence and on the date of the fall, it was apparent that there had been wrongdoing, most likely attributable to defendant hospital.

The ultimate injuries sustained by plaintiff husband were a direct result of the 14 June 1986 fall caused by defendant hospital's wrongdoing which occurred on that date. Therefore, we find the trial court properly granted defendant's motion for summary judgment.

The decision of the trial court is affirmed.

Judges EAGLES and LEWIS concur.