***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Decision and Order of Deputy Commissioner Glenn with modifications.
 *********** *Page 2 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Tort Claims Act.
2. This matter came on pursuant to plaintiffs' Affidavit filed with the North Carolina Industrial Commission on or about June 23, 2003, wherein plaintiffs complained that they relied upon the issuance of improvement permits for the purchase of Lots 29 and 30 of the Roger Wood Cove Subdivision on Mayo Lake in Person County, North Carolina.
3. Plaintiffs entered into a contract with Johnny Woody Rogers for the purchase of Lot 29 and Lot 30 of the Roger Wood Cove Subdivision with the stipulation in the purchase agreement that Lot 29 and Lot 30 of the Roger Wood Cove Subdivision had to be perkable.
4. Plaintiffs sought assistance from the Person County Health Department as to whether Lot 29 and Lot 30 of the Roger Wood Cove Subdivision were perkable. After plaintiffs requested that it be determined whether Lot 29 and Lot 30 of the Roger Wood Cove Subdivision perked and were buildable, Jimmy Clayton caused the property to be tested to determine whether it perked and if it could be improved as plaintiffs had requested.
5. Thereafter, on or about March 1, 1989, Jimmy Clayton, in his capacity as a sanitarian for and as an employee of the Person County Health Department acting within the scope of his employment caused to be issued a Site Classification letter indicating that Lot 29 and Lot 30 of the Roger Wood Cove Subdivision perked and this information was conveyed to plaintiffs. *Page 3 
6. Pursuant to the notification that these lots were perked, plaintiffs consummated the sale and purchased Lot 29 and Lot 30 of the Roger Wood Cove Subdivision for the aggregate purchase price of $60,000 of which plaintiffs paid sellers $30,000 at closing and financed the remaining $30,000.00 balance over the next 5 years.
7. The financed $30,000 balance owing was to be paid in equal installments of $6,000.00 per year plus annually accrued interest at the annual percentage rate of ten percent (10%) on the outstanding balance. Plaintiffs paid in full this financed balance as required in the Purchase Money Note and Deed of Trust.
8. From 1989 through 2000, plaintiffs did nothing to these properties other than removing some of the trees and underbrush growth, grading for driveway, and placing gravel thereon.
9. On April 4, 2000, plaintiffs applied for improvement permits with the Person County Health Department to be allowed to build a two bedroom home with a basement on either Lot 29 or Lot 30 of the Roger Wood Cove Subdivision.
10. At this time plaintiffs were informed by Mike Cash, R.S., employee of the Person County Health Department, that after a visit to the sites to conduct appropriate testing and analysis that he had determined that neither Lot 29 nor Lot 30 of the Roger Wood Cove Subdivision would support the home applied for. Mike Cash, R.S. determined that neither Lot 29 nor Lot 30 of the Roger Wood Cove Subdivision was suitable for the installation of an appropriate sewage septic disposal system. The improvements that plaintiffs sought to make were the same they had indicated they wanted to make before they were told the lots perked and were buildable. *Page 4 
11. Lot 30 of the Roger Wood Cove subdivision would not support any sewage septic disposal system, while Lot 29 of the Roger Wood Cove subdivision would support a sewage septic disposal system but did not have the required repair area for it to be adequate and appropriate for plaintiffs to be able to build the home they desired. Thereafter, plaintiffs' request for improvement permits for Lot 29 and Lot 30 of the Roger Wood Cove Subdivision were denied. Plaintiffs were notified of the denial of their request for improvement permits by a letter from Mr. Cash, dated June 21, 2000. Plaintiffs appealed the denial decision by Mr. Cash.
12. Following the appeal, Fred Smith, Regional Soil Scientist with the North Carolina Department of Environment and Natural Resources, went to the property to run appropriate tests to determine if either Lot 29 or Lot 30 of the Roger Wood Cove Subdivision would support an appropriate sewage septic disposal system. Fred Smith determined that neither Lot 29 and Lot 30 of the Roger Wood Cove Subdivision was appropriate for installation of an appropriate sewage septic disposal system, and he informed Mr. Cash of the same. Mr. Cash in turn advised plaintiffs in a letter dated August 30, 2000 that neither Lot 29 nor Lot 30 of the Roger Wood Cove Subdivision would support an appropriate sewage septic disposal system and their applications were again denied. The envelope in which the August 30, 2000 letter was enclosed was postmarked September 5, 2000.
13. Thereafter, plaintiffs retained experts to assist them in the next steps to determine if an appropriate sewage septic disposal system could be designed for Lot 29 and Lot 30 of the Roger Wood Cove Subdivision. Plaintiffs were advised that if a nearby lot was found that would pass the perk test that it could be used as a repair area.
14. Plaintiffs investigated a number of lots nearby and were able to locate Lot 25 of the Roger Wood Cove Subdivision. Plaintiffs sought an appraisal of the fair market value of Lot *Page 5 
25 of the Roger Wood Cove Subdivision, which appraised at $18,000.00. Plaintiffs made an offer to the owners of Lot 25 of the Roger Wood Cove Subdivision but owners were not willing to sale said lot for $18,000.00 but ultimately agreed to sell the lot for $25,000.00.
15. Another appropriate and available lot was found in the Roger Wood Cove Subdivision but the owners were asking a sales price of $89,000.00. Plaintiffs determined that the $89,000.00 sales price was not reasonable or feasible and therefore entered into a contract to purchase Lot 25 of the Roger Wood Cove Subdivision for $25,000.00. In addition to the $25,000.00 sales price, plaintiffs also paid $515.00 in closing costs for a total purchase cost of $25,515.00.
16. With the purchase of Lot 25 of the Roger Wood Cove Subdivision an improvement permit was issued to plaintiffs by the Person County Health Department for plaintiffs to build a residence on Lot 30 with an active sewage septic disposal system installed on Lot 29 and a repair area reserved on Lot 25.
17. Plaintiff Dudley Dawson is self-employed as an architect in the naval field and at the time in question was a consultant with a normal hourly rate of $135.00 per hour. Due to numerous meetings with Person County Health Department agents and officials and the experts plaintiffs employed, Mr. Dawson lost a minimum of fifty (50) hours from work to resolve the situation with Lot 29 and Lot 30 of the Roger Wood Cove Subdivision with a total loss of income of $6,750.00.
18. In deciding to purchase Lot 29 and Lot 30, plaintiffs relied upon the site evaluations and statements issued on or about March 1, 1989 by Jimmy Clayton, an agent of the Person County Health Department, that the lots were suitable for the building of a residence. Mr. Clayton's statements were later determined to be untrue. *Page 6 
19. The aforementioned repair area on Lot 25 is separate and apart from the area initially approved for the sewage septic disposal system, so if for any reason the initially approved area fails as an improved treatment facility that individual can fall back on the designated repair area for the installation of an appropriate sewage septic disposal system to allow their continued use and enjoyment of property and it's improvements.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction of the parties and subject matter, all of which are properly before North Carolina Industrial Commission. N.C. Gen. Stat. § 143-291.
2. In a tort action against a State department or agency as defendant, plaintiffs must file their claim within three years after accrual. N.C. Gen. Stat. § 143-299. Plaintiffs' cause of action in the case subjudice did not accrue until the damages giving rise to their claim became apparent or ought to have reasonably became apparent to plaintiffs, whichever occurred first. It was not until September 5, 2000 when the final denial letter from Mr. Cash was postmarked that plaintiffs were officially on notice that they would not be able to obtain the requisite permit to construct the septic system in order to build their home. As plaintiffs filed their complaint with the North Carolina Industrial Commission on June 23, 2003, plaintiffs' claim is not barred by the statute of limitations.
3. Pursuant to N.C. Gen. Stat. § 1-52, no cause of action shall accrue more than ten years from the last act or omission of defendant giving rise to plaintiffs' cause of action. Hodge v. Harkey, 178 N.C.App. 222,631 S.E.2d 143 (2006). The statute or repose is triggered from a *Page 7 
specific event regardless of whether a cause of action has arisen.Roemer v. Preferred Roofing, Inc., ___ N.C.App. ___, 660 S.E.2d 920, (2008)(citing, Black v. Littlejohn, 312 N.C. 626, 633, 325 S.E.2d 469,474-75 (1985)). In this case, as defendant's last act or omission took place on September 5, 2000 when defendant postmarked the final denial letter, plaintiffs' claim, which was filed on June 23, 2003, is within the ten-year statute of repose and is not barred.
4. The public duty doctrine was held applicable to the State Tort Claims Act in Stone v. N.C. Dept. of Labor, 347 N.C. 473, 495 S.E.2d 711
(1998). As Mr. Clayton was acting within the scope and course of his duty as a sanitarian for the Person County Health Department and as such an agent of defendant, plaintiffs' claim is not barred by the public duty doctrine. N.C. Gen. Stat. § 143-291.
5. The North Carolina Tort Claims Act permits individuals to sue State departments or agencies for injuries caused by the negligence of State employees. A plaintiff must show that the injuries sustained were the proximate result of a negligent act of a named state employee acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bokhir v. NCState Univ., 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
6. In order to recover on a civil claim for negligence, a claimant must prove: (1) the existence of a duty; (2) a breach of that duty by the defendant (the named employees thereof in a tort claim); (3) injury sustained; and (4) that the injury sustained was a proximate result of the breach of duty. Pulley v. Rex Hospital 326 N.C. 701, 392 S.E.2d 380
(1990).
7. In this case, Mr. Clayton was acting within the scope and course of his duty as a sanitarian for the Person County Health Department and as such he was an agent of defendant, Department of Environment and Natural Resources. Mr. Clayton owed plaintiffs a duty of care *Page 8 
in making a proper assessment of plaintiffs' lot before issuing site classifications indicating that plaintiffs' lots were perkable and suitable for a septic system. Mr. Clayton breached that duty of care by negligently issuing the March 1, 1989 site classification letters. Defendant has failed to show that plaintiff was contributorily negligent. N.C. Gen. Stat. § 97-86.2.
8. As a direct and proximate result of defendant's negligence plaintiffs were damaged and are entitled to recover the sum of $25,000.00 representing reimbursement of the cost of Lot 25 of the Roger Wood Cove Subdivision, the sum of $515.00 representing the cost incurred in closing the purchase of Lot 25 of the Roger Wood Cove Subdivision, and the sum $6,750.00 representing reimbursement for lost earnings by plaintiff, Dudley Dawson. Plaintiffs are further entitled to the sum $900.00 representing reimbursement of payments to experts hired which allowed him to be able to use Lot 29 and Lot 30 of the Roger Wood Cove Subdivision, the sum $375.00 representing reimbursement of appraisal fees incurred in the purchase of Lot 25, and the amount of the ad valorem taxes paid by plaintiffs to the Person County Tax Office for Lot 25 of the Roger Wood Cove Subdivision for tax years 2002-2006.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendant shall pay to plaintiffs the sum of $25,000.00 representing reimbursement of the cost of Lot 25 of the Roger Wood Cove Subdivision
2. Defendant shall pay to plaintiffs the sum of $515.00 representing the cost incurred in closing the purchase of Lot 25 of the Roger Wood Cove Subdivision. *Page 9 
3. Defendant shall pay to plaintiffs the sum $6,750.00 representing reimbursement for lost earnings by Plaintiff, Dudley Dawson.
4. Defendant shall pay to plaintiffs the sum $900.00 representing reimbursement of payments to experts hired which allowed him to be able to use Lot 29 and Lot 30 of the Roger Wood Cove Subdivision.
5. Defendant shall pay to plaintiffs the sum $375.00 representing reimbursement of appraisal fees incurred in the purchase of Lot 25 of the Roger Wood Cove Subdivision.
6. Defendant shall reimburse plaintiffs for the ad valorem taxes paid by Plaintiffs to Person County Tax Office for Lot 25 of the Roger Wood Cove Subdivision for tax years 2002-2006.
7. Defendant shall pay the cost of this matter including plaintiff's expenses.
This the 26th day of August 2008.
 S/___________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1