DONALD M. MONSON, Plaintiff v. PARAMOUNT HOMES, INC., Defendant and Third-Party Plaintiff v. SIMPLEX PRODUCTS DIVISION OF K2INC. and CAROLINA BUILDERS CORPORATION, Third-Party Defendants

No. COA98-463

(Filed 18 May 1999)

**Statute of Limitations— repose—tolling—synthetic stucco—repairs**

The trial court did not err by granting a motion to dismiss claims arising from synthetic stucco on a home and replacement windows and doors. A duty to complete performance may occur after the date of substantial completion; however, a "repair" does not qualify as a "last act" under N.C.G.S. § 1-50(5) unless it is required under an improvement contract by agreement of the parties. To allow the statute of repose to toll or start running anew each time a repair is made would subject a defendant to potential open-ended liability for an indefinite period of time, defeating the very purpose of statutes of repose.

Judge Greene dissenting.

Appeal by defendant and third-party plaintiff Paramount Homes, Inc., from judgment entered 15 January 1998 by Judge Ronald L. Stephens in Durham County Superior Court. Heard in the Court of Appeals 5 January 1999.

*Brown, Todd & Heyburn, P.L.L.C., by Julie M. Goodman, and Smith Helms Mulliss & Moore, L.L.P., by Gary R. Govert, for defendant and third-party plaintiff-appellant.*

*Hunton & Williams, by Steven B. Epstein for third-party defendant-appellee Carolina Builders Corporation.*

HUNTER, Judge.

In August 1990, general contractor defendant Paramount Homes, Inc. ("Paramount") completed the house at issue in this case. Paramount sold the home to the original owner, who subsequently sold the house to plaintiff in 1993. On 29 August 1996, plaintiff filed suit against Paramount for defective construction of the house. Plaintiff alleged use of defective materials and improper installation of windows, doors, and exterior insulation and finish systems ("EIFS") cladding, also known as synthetic stucco. Paramount, in

MONSON v. PARAMOUNT HOMES, INC.

[133 N.C. App. 235 (1999)]

turn, sought indemnity and contribution from Simplex Products Division of K2inc. ("Simplex"), the manufacturer of the EIFS installed at plaintiff's house, by third-party complaint filed 20 December 1996. During discovery, Paramount learned that Carolina Builders Corporation ("CBC") had made repairs and replacements to the windows and doors at the house at plaintiff's request in 1994. CBC had manufactured and sold the materials to Paramount during original construction of the house. Paramount filed a motion on 16 October 1997 to add CBC as a second third-party defendant, which was granted on 23 October 1997. Paramount filed its amended third-party complaint on 29 October 1997 alleging causes of action against CBC for breach of contract, breach of express and implied warranties, and negligence. CBC moved to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. CBC's motion was granted on the grounds that Paramount's claims were filed after the applicable statute of repose had expired. On 28 April 1998, plaintiff filed a voluntary dismissal with prejudice of his lawsuit. On 29 May 1998, Paramount filed a voluntary dismissal with prejudice of its third-party claims against Simplex. Paramount appeals the dismissal of CBC as a third-party defendant.

The parties acknowledge that the applicable statute of repose in the present case is the real property improvement statute which states:

> No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the *later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.*

N.C. Gen. Stat. § 1-50(5)(a) (1996) (emphasis added). While the statute does not clarify the meaning of "last act or omission" any further, "substantial completion" means

> that degree of completion of a project, improvement or specified area or portion thereof (in accordance with the contract, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended. The date of substantial completion may be established by written agreement.

N.C. Gen. Stat. § 1-50(5)(c) (1996). N.C. Gen. Stat. § 1-50(5) applies to defective improvements to real property by a materialman, meaning

one who furnishes or supplies materials used in building construction, renovation or repair. *Forsyth Memorial Hospital v. Armstrong World Industries*, 336 N.C. 438, 444 S.E.2d 423 (1994). Thus, N.C. Gen. Stat. § 1-50(5) applies to CBC in the present case.

Paramount contends the court erred in granting CBC summary judgment because its "last act or omission" giving rise to the relevant claims was the repairs completed by CBC in 1994; therefore, the claim is valid since it was filed in 1997, well within the six year statute of repose. Paramount supports its position by citing *New Bern Assoc. v. The Celotex Corp.*, 87 N.C. App. 65, 359 S.E.2d 481, *disc. review denied*, 321 N.C. 297, 362 S.E.2d 782 (1987).

In *New Bern*, plaintiff New Bern Associates brought suit against the Celotex Corporation ("Celotex") alleging breach of warranties in connection with roofing materials manufactured by Celotex and installed on plaintiff's building. Construction of the building, including the installation of Celotex's roofing materials, had been substantially completed on or prior to 18 March 1975. On 28 April 1986, Celotex asserted third-party claims for indemnity and contribution against T.A. Loving Company ("Loving"), the general contractor responsible for constructing the building and installing the roofing materials. In regards to when the statute of repose began to run, the Court held that the 1963 version of the statute applicable in *New Bern* is the same as the 1981 version, stating: "We think it means nothing different from the language of the 1981 version in which the statute runs 'from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.' " *Id.* at 70-71, 359 S.E.2d at 485. Therefore, the Court found that the claim against Loving would be valid, under the statute of repose, only if the substantial completion date or last act or omission of Loving occurred on or after 28 April 1980.

The evidence in *New Bern* indicated that the completion date was 18 March 1975; however, one of Loving's employees was involved in continuous efforts to repair the property from the 18 March 1975 completion date until after 28 April 1980. This Court found that the dispute over whether the individual was actually Loving's agent after 28 April 1980 was a genuine issue of material fact as to whether Loving's "last act or omission alleged to give rise to plaintiff's injury occurred within six years of the date Celotex filed its third-party complaint," and remanded the case in order for this determination to be made. *Id.* at 71, 359 S.E.2d at 485. The Court did not hold

that the individual's acts, if he were Loving's agent after 28 April 1980, would qualify as Loving's "last act or omission" under the statute of repose. Therefore, *New Bern* is persuasive, but not controlling in the case *sub judice*. The dispositive issue in the present case is whether a repair qualifies as the "last act or omission" under N.C. Gen. Stat. § 1-50(5).

While the Court in *New Bern* referred to the repairs in question as continuous efforts after the completion date, it gave no indication whether these repairs were pursuant to the original improvement contract, a warranty, or new and separate contracts. In the present case, Paramount alleges in its third-party complaint that CBC, pursuant to contract, supplied Paramount with windows, doors, and associated materials for use in construction of the house in 1990. Paramount further alleges that, pursuant to the *plaintiff's* dissatisfaction with the materials:

> CBC returned to the House [sic] in approximately the spring or summer of 1994 to inspect, repair, and replace the windows about which the plaintiff had complained. Upon information and belief, CBC performed this repair and replacement work pursuant to a warranty and did not charge the plaintiff for replacement parts provided.

While alleging in its third-party complaint that the repairs were completed pursuant to a warranty given in 1990, Paramount also attempts, in its brief, to classify the 1994 repairs as duties under the original 1990 improvement contract. The allegations of the third-party complaint must be treated as true, as the court is ruling on a motion to dismiss for failure to state a claim upon which relief can be granted. *Hickman v. McKoin*, 337 N.C. 460, 462, 446 S.E.2d 80, 82 (1994). Paramount never alleges in its third-party complaint, or in its brief, that CBC failed to complete performance and finish the improvement in 1990. The record reveals, and both parties concede, that the plaintiff's house was completed in 1990. Thus, CBC had completed its duties under its contract with Paramount in 1990 and the statute of repose began to run.

Paramount has not contended that the 1994 repair should be classified as a new and separate improvement, thus starting the running of a second statute of repose. Therefore, this issue is not addressed. Paramount, however, does contend that the statute of repose did not begin running or was "reset" in 1994 because CBC "must have believed that it had a duty to do those [1994] repairs, and any such

MONSON v. PARAMOUNT HOMES, INC.

[133 N.C. App. 235 (1999)]

duty could only have been created pursuant to its contract with Paramount and the warranties provided in connection with that contract." While Paramount opines as to why CBC made the repairs, it presents no evidence that CBC had a continuing duty to complete any repairs under the original 1990 improvement contract. Also, there is no evidence in the record indicating that CBC had a continuing duty to repair under any implied or express warranty.

Assuming *arguendo* that a continuing duty of repair existed pursuant to a warranty, no evidence indicates that CBC had a continuing duty to repair under the improvement contract with Paramount. A warranty is unique in that it anticipates future performance; therefore, this Court has held that a statute of limitations is tolled during the time the seller endeavors to make repairs to enable the product to comply with a warranty. *Haywood Street Redevelopment Corp. v. Peterson Co.*, 120 N.C. App. 832, 463 S.E.2d 564 (1995). In that case, the defendant gave a written express warranty on a waterproofing surface on plaintiff's parking lot on 15 June 1988 and agreed to correct deficiencies in the work until 15 March 1993. The Court stated that the warranty "is in the nature of a prospective warranty, in that it guarantees the future performance of the waterproofing for a stated period of time." *Id.* at 836, 463 S.E.2d at 566 (citations omitted). Therefore, on each day the waterproofing was not free of defects, there was a new breach of the warranty. With the occurrence of each breach, a new cause of action accrued. *Id.* at 837, 463 S.E.2d at 567. The case was reversed and remanded because the statute of limitations was tolled during the repair period, and because the breach of warranty claim was filed within three years pursuant to N.C. Gen. Stat. § 1-52(1) (1983)—the statute of limitations applicable to breach of warranty and contract claims.

*Haywood* is distinguishable from the present case. Paramount, while alleging breach of implied and express warranties, does not rely on the statute of limitations found in N.C. Gen. Stat. § 1-52(1), which applies to breach of warranty. However, the holding in *Haywood* does indicate that once the improvement to which the warranty applied was completed, the applicable statute of limitations began running. A subsequent repair, pursuant to a warranty, tolled the running of the statute of limitations, but it did not "reset" the running of the statute of limitations. Likewise, Paramount presents no precedent for the proposition that the statute of repose, once it begins running upon completion of the improvement, can be "reset" or "tolled" during a repair. The holding of *New Bern* never determined affirmatively that

the statute of repose began running at a certain date, thus the issues of "tolling" or "resetting" were never addressed.

In another similar case, *Cascade Gardens v. McKellar & Assoc.*, 240 Cal. Rptr. 113 (4th Dist. 1987), the defendant developed the Cascade Gardens Condominiums from 1972 to 1973 and filed its notice of completion on 13 July 1973. Soon after the homeowners moved into the condominiums, they notified defendant developer of roof leaks, as well as other defects. Defendant contracted with a roofing company to reroof the condominiums, which took from December 1973 to March 1974. The Court did not find that the repair reset the applicable statute of limitations which began at the date of completion, however, the statute was tolled during the four month period of repairs. *Cascade*, 240 Cal. Rptr. at 116-17.

While equitable doctrines may toll statutes of limitation, they do not toll substantive rights created by statutes of repose. *Stallings v. Gunter*, 99 N.C. App. 710, 716, 394 S.E.2d 212, 216 (*citing* Restatement (Second) of Torts § 899, Comment (g) (1979)), *disc. review denied*, 327 N.C. 638, 399 S.E.2d 125 (1990). The statute of repose codified as N.C. Gen. Stat. § 1-50(5) is "designed to limit the potential liability of architects, contractors, and perhaps others in the construction industry for improvements made to real property." *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 427-28, 302 S.E.2d 868, 873 (1983). To allow the statute of repose to toll or start running anew each time a repair is made would subject a defendant to potential open-ended liability for an indefinite period of time, defeating the very purpose of statutes of repose such as N.C. Gen. Stat. § 1-50(5). *See, e.g., Tetterton v. Long Manufacturing Co.*, 314 N.C. 44, 56, 332 S.E.2d 67, 74 (1985). A statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue," *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985), and functions to give a defendant a vested right not to be sued if the plaintiff fails to file within the prescribed period. *Colony Hill Condominium I Assoc. v. Colony Co.*, 70 N.C. App. 390, 320 S.E.2d 273 (1984). In short, a statute of repose bars an action a specified number of years after a defendant has completed an act, even if the plaintiff has not yet suffered injury. Our Supreme Court has stated:

> Statutes of limitation are generally seen as running from the time of injury, or discovery of the injury in cases where that is difficult to detect. They serve to limit the time within which an action may

MONSON v. PARAMOUNT HOMES, INC.

[133 N.C. App. 235 (1999)]

be commenced after the cause of action has accrued. Statutes of repose, on the other hand, create time limitations which are not measured from the date of injury. These time limitations often run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant.

*Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 234 n.3, 328 S.E.2d 274, 276-77 n.3 (1985); *see Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849 (1988) (statute of repose sets a fixed time limit beyond which plaintiff's claim will not be recognized); *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 440, 302 S.E.2d 868, 880 ("unless the injury occurs within the six-year period, there is no cognizable claim").

According to N.C. Gen. Stat. § 1-50(5), the statute of repose begins running at the later of the last act or omission or date of substantial completion. Other courts have held that since all liability has its genesis in the contractual relationship of the parties, an owner's claim arising out of defective construction accrues on completion of performance "no matter how a claim is characterized in the complaint—negligence, malpractice, breach of contract." *SC. Dist. of Newburgh v. Stubbins & Assocs.*, 626 N.Y.S.2d 741, 742-43, 650 N.E.2d 399, 400-01 (1995). We agree with this reasoning. The logical interpretation of our statute includes classifying the later of the last act or omission or date of substantial completion as the date at which time the party (contractor, builder, etc.) has completed performance of the improvement contract. Accordingly, the last omission may occur when the party fails to perform or does not complete performance. A duty to complete performance may occur after the date of substantial completion, however, a "repair" does not qualify as a "last act" under N.C. Gen. Stat. § 1-50(5) unless it is required under the improvement contract by agreement of the parties.

Our holding coincides with the public policy encouraging repairs and subsequent remedial measures, codified in Rule 407 of the North Carolina Rule of Evidence. Rule 407 provides, in part: "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." N.C.R. Evid. 407. The commentary to this rule makes its purpose clear:

The . . . more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging

them from taking, steps in furtherance of added safety. The courts have applied this principle to exclude evidence of subsequent repairs . . . and the language of the present rule is broad enough to encompass [such application].

*Id.* (Commentary). The rationale behind this policy is that a party might avoid repairing work it had earlier performed, or a product it had earlier manufactured and sold, if it believed that such repairs might later be construed as an admission that the original work was improper or defective. *See* 2 *Weinstein's Federal Evidence* § 407.03 [1] (1999). To allow subsequent repairs to restart the statute of repose would defeat the policy underpinning both Rule 407 and N.C. Gen. Stat. § 1-50(5).

Based on the foregoing, we hold that the last act or omission by CBC in completing the improvement at issue—in this case supplying materials for original construction of plaintiff's house—occurred on or prior to August 1990, the date of substantial completion. At that point, performance was completed by CBC and in accordance with N.C. Gen. Stat. § 1-50(5), the statute of repose began to run. The repairs in 1994 did not reset the running of the statute of repose. Therefore, the claims of Paramount against CBC are time-barred under N.C. Gen. Stat. § 1-50(5), as they were not filed until after August 1996, more than six years after the last act and date of substantial completion. The trial court did not err when it granted CBC's motion to dismiss.

Affirmed.

Judge JOHN concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I would hold that the trial court erred in dismissing Paramount's complaint; therefore I respectfully dissent from the majority opinion.

When deciding a motion to dismiss, the trial court must determine "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory . . . ." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). A complaint should not be dismissed " 'unless it affirmatively appears that the plaintiff is enti-

tled to no relief under any state of facts which could be presented in support of the claim.' " *Forsyth Memorial Hospital v. Armstrong World Industries*, 336 N.C. 438, 444, 444 S.E.2d 423, 427 (1994) (quoting *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985)); *see also Arroyo v. Scottie's Professional Window Cleaning*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (noting that complaints must be liberally construed on a motion to dismiss), *disc. review improvidently allowed*, 343 N.C. 118, 468 S.E.2d 58 (1996). Accordingly, unlike the majority, I do not find it dispositive that Paramount has "present[ed] no evidence that CBC had a continuing duty to complete any repairs under the original 1990 improvement contract" or that "there is no evidence in the record indicating that CBC had a continuing duty to repair under any implied or express warranty." *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 239, 515 S.E.2d 445, —— (1999). Paramount's allegations, liberally construed and taken as true, suffice at this stage of the proceedings.

The applicable six-year statute of repose begins to run at *the later of* (1) "the specific last act or omission of the defendant giving rise to the cause of action" *or* (2) "substantial completion" of the improvement. N.C.G.S. § 1-50(a)(5) (Supp. 1998). The "last act" giving rise to the cause of action is determined by "the nature of the services [the defendant] agreed to perform." *Hargett v. Holland*, 337 N.C. 651, 656, 447 S.E.2d 784, 788 (construing similar language in section 1-15(c)), *reh'g denied*, 338 N.C. 672, 453 S.E.2d 177 (1994).

In this case, Paramount alleges CBC "made numerous express and implied warranties to Paramount, concerning the windows and associated materials used in construction of the [Monson house]." Accordingly, the nature of the services CBC agreed to perform allegedly included future duties during the warranty period. *See Haywood Street Redevelopment Corp. v. Peterson Co.*, 120 N.C. App. 832, 836, 463 S.E.2d 564, 566-67 (1995) (discussing prospective warranties), *disc. review denied*, 342 N.C. 655, 467 S.E.2d 712 (1996). In 1994, CBC allegedly repaired and/or replaced windows in the Monson house pursuant to the warranty, *i.e.*, pursuant to its duties to Paramount. It follows that CBC's "last act" under the contract occurred in 1994.

In any event, Paramount's complaint further alleges "the CBC windows installed in the [Monson house] continued to leak and allow moisture intrusion behind the EIFS cladding on the [Monson house] even after CBC's repair and replacement." It therefore follows that the statute of repose began to "run anew" from the date of CBC's

repairs, because the replacement windows were defective and were a proximate cause of damage to the Monson house. *See* 63B Am. Jur. 2d *Products Liability* § 1629 (1997) (noting that the "time period in a statute of repose may run anew with respect to a replacement part for a product, if the replacement part itself is defective . . . and is the proximate cause of the plaintiff's injuries").

In addition, I believe *New Bern Assoc. v. The Celotex Corp.*, 87 N.C. App. 65, 359 S.E.2d 481, *disc. review denied*, 321 N.C. 297, 362 S.E.2d 782 (1987), controls the outcome of this case. The majority attempts to distinguish *New Bern* by stating that we did not hold that repairs may constitute the "last act" giving rise to a cause of action in that case. I disagree. In *New Bern*, we reversed and remanded the trial court's grant of summary judgment. Summary judgment, as this Court noted therein, is appropriate "if there is no genuine issue of *material* fact and any party is entitled to judgment as a matter of law." *New Bern*, 87 N.C. App. at 68, 359 S.E.2d at 483 (emphasis added). The evidence in *New Bern* was equivocal as to whether the individual who had conducted repairs within six years of the filing of the plaintiff's action acted as the defendant's agent; accordingly, there existed a genuine issue of fact as to whether *the defendant* had made repairs within the preceding six years. If the repairs at issue could not have constituted the "last act" giving rise to the cause of action, this genuine issue of fact would not have been *material*, and therefore would not have supported our reversal of the trial court's decision. Contrary to the majority's conclusion, therefore, this Court has determined that repairs may constitute the "last act" of the defendant giving rise to the cause of action. Accordingly, we are bound, at this stage of the proceedings, to hold that the applicable statute of repose began to run in 1994, the date of the alleged "last act" giving rise to the cause of action. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (holding one panel of the Court of Appeals is bound by the decisions of other panels unless they have been overturned by a higher court).

Finally, I disagree with the majority's conclusion that treating a repair as the "last act" would defeat our public policy encouraging repairs. To the contrary, treating a repair as the "last act" would, in fact, encourage repairs as an alternative to litigation. In other words, refusing to treat a repair as the "last act" would encourage the homeowner to bring suit immediately upon noticing a defect (*i.e.*, before the statute of repose has run), rather than working with the contractor (or subcontractor) for a nonlitigious solution.