WILLIAM R. WHITEHURST, AND WIFE, MARY DARLENE WHITEHURST, PLAINTIFFS V. HURST BUILT, INC.; CARL E. SMITH, D/B/A SELECT STUCCO; AND STO CORP., DEFENDANTS

No. COA02-352

(Filed 18 March 2003)

**Statutes of Limitation and Repose— real property improvement statute of repose—installation of synthetic stucco system**

The trial court did not err by granting defendant builder's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' claims, arising out of the improper installation of a synthetic

———————————

WHITEHURST v. HURST BUILT, INC.

[156 N.C. App. 650 (2003)]

stucco system on a house, based on expiration of the real property improvement statute of repose under N.C.G.S. § 1-50(a)(5)a, because: (1) the complaint was filed more than six years after substantial completion of the house, and the complaint stated that the only acts subsequent to completion were repairs; and (2) the complaint contained no allegation that the purchase agreement contained an explicit repair obligation apart from any duty existing under warranty.

Appeal by plaintiffs from judgment entered 18 October 2001 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 7 January 2003.

*Lewis & Roberts, PLLC, by Daniel K. Bryson and Kurt F. Hausler, for plaintiffs-appellants.*

*Dean & Gibson, L.L.P., by Christopher J. Culp, for defendant-appellee, Hurst Built, Inc.*

*Dinsmore & Shohl, L.L.P., by Joseph N. Tucker, for defendant-appellee, Hurst Built, Inc.*

GEER, Judge.

This appeal addresses the application of the statute of repose in N.C. Gen. Stat. § 1-50(a)(5)a to claims arising out of the installation of a synthetic stucco system on a house. We hold that the superior court properly granted defendant's motion to dismiss when the complaint was filed more than six years after substantial completion of the house and, according to the complaint, the only acts subsequent to completion were repairs.[1]

In January 1992, plaintiffs Mr. and Mrs. Whitehurst entered into a contract with defendant Hurst Built, Inc. ("Hurst") for the construction and purchase of a house. Hurst served as the general contractor for the Whitehursts' house and employed Select Stucco to apply a synthetic stucco system (also known as EIFS) on the exterior. The Whitehursts moved into the house after the closing on 12 August 1992.

---

1. Plaintiffs originally sued three defendants, including appellee Hurst Built, Inc. (the builder), Sto Corp. (the manufacturer of the synthetic stucco system), and Select Stucco (the contractor who applied the stucco). The present appeal involves only Hurst Built, Inc. Plaintiffs dismissed their claims against Sto Corp. and the trial court granted Select Stucco's motion to dismiss, from which order plaintiffs did not appeal.

The complaint alleges that between August 1992 and the summer of 1994, the Whitehursts experienced several moisture intrusion problems with their house. Upon discovery of each problem, they notified Hurst, which then on several occasions performed or directed repairs. In the summer of 1994, Hurst agreed to test the house for moisture intrusion by removing sections of the EIFS, but found no moisture visible on the sheathing. Select Stucco replaced the removed EIFS and Hurst assured the Whitehursts that they would experience no problems with the EIFS if they caulked and painted the house every three to five years.

In January 1996, the Whitehursts notified Hurst that there were several areas at the rear of their house where the EIFS appeared to be pulling away. After Hurst and Select Stucco made repairs to the problem areas, Select Stucco reported to the Whitehursts that they had found no moisture intrusion.

In mid-June 1996, because of reports in the media regarding problems with synthetic stucco houses and because of their own continuing problems, the Whitehursts became concerned that the EIFS on their house was either defective or defectively applied. Plaintiffs, therefore, had Prime South Homes, Inc. inspect their house. Prime South found elevated moisture readings and concluded that the EIFS had been improperly applied.

Plaintiffs filed suit three years later on 4 June 1999, alleging that they had notified defendants of the moisture-related damage as well as their concerns about defective EIFS, but that defendants had failed to perform the necessary "remedial activities" to correct the defects. Plaintiffs were required to remove the EIFS on their own, repair the damage, and install new exterior siding. With respect to Hurst, plaintiffs alleged negligence, breach of express warranty, breach of implied warranties of habitability and good workmanship, breach of contract, breach of implied warranty of merchantability, negligent misrepresentation, breach of implied warranty of fitness for particular purpose, unfair and deceptive trade practices, and negligence *per se*.

On 10 August 1999, defendant made a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on the ground that the real property improvement statute of repose and the applicable statutes of limitation barred plaintiffs' claims. Plaintiffs filed no response to defendant's motion to dismiss. At the 4 October 1999 hearing on defendant's motion, plaintiffs and their counsel failed

**WHITEHURST v. HURST BUILT, INC.**

[156 N.C. App. 650 (2003)]

to appear. On the next scheduled hearing date, 10 December 1999, neither plaintiffs nor their counsel appeared and the court entered an order granting defendant's motion to dismiss with prejudice.

Thereafter, plaintiffs filed a motion to reconsider and a rehearing on defendant's motion to dismiss was held 3 July 2001. After rehearing the matter, the trial court declined to reverse its initial order of dismissal.

## Standard of Review

"When a party files a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), '[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not.' " *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001) (quoting *Harris v. NCNB*, 85 N.C. App. 669, 670-71, 355 S.E.2d 838, 840 (1987)). The court must construe the complaint liberally and "should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). The appellate court conducts a *de novo* review of the pleadings to determine their legal sufficiency and decides whether the trial court's ruling on the motion to dismiss was erroneous.

## Statute of Repose

The North Carolina real property improvement statute of repose provides:

No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

N.C. Gen. Stat. § 1-50(a)(5)a.[2] "The repose period begins to run when an event occurs, regardless of whether or not there has been an injury." *Bryant v. Don Galloway Homes, Inc.*, 147 N.C. App. 655, 657, 556 S.E.2d 597, 600 (2001). Plaintiffs had the burden of showing that

---

2. The parties have focused solely on the applicability of the statute of repose. We do not, therefore, address whether any of plaintiffs' claims would also have been barred by the applicable statutes of limitation.

they brought this action within six years of either (1) the substantial completion of the house; or (2) the specific last act or omission of defendant giving rise to their causes of action. *Nolan v. Paramount Homes, Inc.*, 135 N.C. App. 73, 76, 518 S.E.2d 789, 791 (1999), *disc. review denied*, 351 N.C. 359, 542 S.E.2d 214 (2000).

The Whitehursts correctly concede that they filed suit more than six years after "substantial completion" of their house since they were able to move into the house in August 1992. Plaintiffs argue, however, that their complaint sufficiently alleged that the last act or omission of defendant occurred within six years of the date of the filing of their complaint. We disagree.

Since the complaint was filed on 4 June 1999, we must determine what acts or omissions the complaint alleges as occurring during the six-year period beginning 4 June 1993. In *Nolan*, 135 N.C. App. at 79, 518 S.E.2d at 793, this Court stated, "In order to constitute a last act or omission, that act or omission must give rise to the cause of action." With respect to EIFS or moisture damage, the bases for plaintiffs' causes of action, the complaint alleges three instances in which Hurst arguably acted after 4 June 1993. The complaint refers generally to "several moisture intrusion problems" occurring between August 1992 and summer 1994 and alleges that Hurst, when notified of the problem, "visited the house to perform or direct repairs." In summer 1994, Hurst tested for moisture intrusion, but found none. In January 1996, the EIFS was pulling away from the house and Hurst "made repairs to the affected areas." The viability of plaintiffs' complaint hinges on whether the 1992-1994 and January 1996 "repairs" are sufficient to constitute a last act or omission under N.C. Gen. Stat. § 1-50(a)(5)a.

This Court has already answered that question in *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 515 S.E.2d 445 (1999). After considering allegations indistinguishable from those in this case, this Court held: "A duty to complete performance may occur after the date of substantial completion, however, a 'repair' does not qualify as a 'last act' under N.C. Gen. Stat. § 1-50(5)[sic] unless it is required under the improvement contract by agreement of the parties." *Id.* at 241, 515 S.E.2d at 450. The *Monson* Court explained that "[t]o allow the statute of repose to toll or start running anew each time a repair is made would subject a defendant to potential open-ended liability for an indefinite period of time, defeating the very purpose of statutes of repose such as N.C. Gen. Stat. § 1-50(5) [sic]." *Id.* at 240, 515 S.E.2d at 449. We are bound by *Monson*. Since, according

to plaintiffs' complaint, the only work performed on plaintiffs' house after 1993 was "repairs," we cannot classify those acts as a "last act or omission" under N.C. Gen. Stat. § 1-50(a)(5)a.[3]

While plaintiffs argue that Hurst's work on the house in January 1996 was done in order to complete the house in accordance with the terms of the initial contract, the complaint contains no allegation that the purchase agreement contained an explicit repair obligation apart from any duty existing pursuant to warranty. Without such an allegation, this case cannot be distinguished from *Monson. See Monson*, 133 N.C. App. at 239, 515 S.E.2d at 448 (finding statute of repose applicable even "[a]ssuming *arguendo* that a continuing duty of repair existed pursuant to a warranty"); *Nolan*, 135 N.C. App. at 77-78, 518 S.E.2d at 792 (because implied warranties related to improper construction of home, statute of repose began to run on the last day defendant performed construction). Even after liberally construing the pleadings and treating plaintiffs' allegations as true, we cannot conclude that defendant's actions subsequent to June 1993 were anything other than a repair. Thus, we find that the trial court did not err in granting defendant's motion to dismiss.

Affirmed.

Judges McCULLOUGH and BRYANT concur.

3. Plaintiffs contend in their brief that no moisture intrusion occurred prior to the repairs in January 1996 and that the repairs necessarily, therefore, caused the moisture problem. This contention is inconsistent with the complaint, which describes "moisture intrusion problems" occurring as early as August 1992 and "continuing" through mid-June 1996.