Carol Diane CONWAY, Surviving Mother of Dennis Howard, Deceased, and Independent Administratrix of the Estate of Dennis Howard, Deceased, Appellant

v.

HI–TECH ENGINEERING, INC. and Gillingham Best, Inc., Appellees.

No. 09–1049.

Supreme Court of Arkansas.

April 28, 2011.

Rehearing Denied June 2, 2011.

Provost Umphrey Law Firm, Little Rock, by: Darren L. Brown; Thomas H.

McGowan; and Cullen & Co., PLLC, Little Rock, by: Tim Cullen, Tasha C. Taylor, and Andrew M. Taylor, for appellant.

Huckabay, Munson, Rowlett & Moore, P.A., Little Rock, by: John Payne, Shane Strabala, and Ashleigh Phillips, for appellee Hi-Tech Engineering, Inc.

Wright, Lindsey & Jennings LLP, Little Rock, by: Scott A. Irby and Paul D. Morris, for appellee Gillingham Best, Inc.

DONALD L. CORBIN, Justice.

Appellant, Carol Diane Conway, individually as the surviving mother and in her capacity as independent administratrix of the estate of Dennis Howard, deceased, appeals the order of the Garland County Circuit Court granting summary judgment to Appellees, Hi–Tech Engineering, Inc. (HTE), and Gillingham Best, Inc. (GBI), on her complaint for damages resulting from the death of her son. She raises three points for reversal, arguing that the circuit court erred in granting summary judgment on her claims for negligence, gross negligence, and breach of contract. Jurisdiction is properly in this court pursuant to Arkansas Supreme Court Rules 1–2(b)(1) and (b)(5) (2010), as the case presents an issue of first impression and an issue needing clarification or development of the law. We find no error and affirm.

## I. Facts and Procedural History

This case has a rather long procedural history that includes a complaint that was amended seven times, multiple motions to dismiss, and three motions for summary judgment. In addition, there were multiple rulings along the way from different judges in the circuit court. We do not recite a detailed and complete procedural history, but only the basic parts necessary

for an understanding of the issues presented on this appeal.

Appellant's son Dennis Howard was crushed to his death on September 9, 2004, between the roll case and the stacker carriage arm of an automated log-stacking machine while working at a Weyerhaeuser sawmill facility near New Bern, North Carolina. Appellant filed suit against Appellee HTE on February 3, 2005, alleging that HTE was an Arkansas corporation located in Hot Springs that had negligently and defectively designed, manufactured, and marketed the log-stacking machine involved in Appellant's death.

HTE subsequently filed a third-party complaint for indemnity against Appellee GBI, denying that it designed the automated stacking machine at issue in the lawsuit and alleging that GBI designed the stacker at issue. According to the third-party complaint, HTE sold the automated stacker at issue to Weyerhaeuser pursuant to an exclusive licensing agreement between HTE and GBI. Appellant later amended her complaint to name GBI as a defendant. In other amendments to her complaint, Appellant asserted claims for gross negligence and for breach of warranties and breach of contract as a third-party beneficiary to the contract for the sale of the lumber stacker from HTE to Weyerhaeuser.

After HTE and GBI jointly filed their first motion for summary judgment, the circuit court entered an order on December 29, 2006, granting partial summary judgment on Appellant's products-liability claim as barred under the North Carolina statute of repose for defective products, N.C. Gen.Stat. § 1–50(a)(6) (Repl.2007). The circuit court conducted a choice-of-law analysis and concluded that North Carolina law should be applied in deciding this case. The circuit court reasoned that the place of injury and the contacts were overwhelmingly found in North Carolina, as Appellant was from North Carolina, the estate was being administered in North Carolina, the machine remained in North Carolina, and most of the witnesses to the accident were in North Carolina. The circuit court also reasoned that North Carolina law included a statute of repose that would be outcome determinative. Appellant and Appellees do not raise choice of law as an issue in this appeal. The circuit court later denied Appellant's motion to reconsider and entered an order clarifying that the December 29, 2006 order granted partial summary judgment only on Appellant's products-liability claims and that the contract and warranty claims remained viable. Appellant appealed the December 2006 order to the Arkansas Court of Appeals and then voluntarily dismissed that appeal.

Following the partial summary judgment on her products-liability claim, Appellant filed a fourth amended complaint in which she included an alternative claim for negligence, wherein she alleged that the lumber stacker was an improvement to real property and therefore governed by North Carolina's statute of repose for improvements to real property, N.C. Gen. Stat. § 1–50(a)(5) (Repl.2009). Appellant further alleged that, pursuant to N.C. Gen. Stat. § 1–50(a)(5)(e) (Repl.2009), GBI and HTE would have no defense available under the statute of repose for improvements to real property because they designed the lumber stacker with a willful, wanton, and reckless disregard for the safety of others and for the terms of the contract with Weyerhaeuser that required compliance with OSHA standards.

HTE and GBI separately filed their second motions for summary judgment. The circuit court denied these motions, ruling that issues of fact remained as to whether Appellees' conduct was willful and whether

Appellant was an intended third-party beneficiary.

Appellant made further amendments to her complaint, adding an assertion that comparative fault or contributory negligence was not an available defense to a claim for gross negligence. Ultimately, the seventh amended and final version of Appellant's complaint alleged claims for wrongful death and survival against both HTE and GBI based on the theories of products liability, negligence, negligence per se or willful and wanton conduct, breach of warranties, breach of contract, and a defective or unsafe condition of an improvement to real property.

HTE filed a motion to dismiss the products-liability claims, as the court had previously granted summary judgment on the basis that they had been determined to be time-barred, and to reconsider the denial of summary judgment on the contract claim, arguing that it was also time-barred under the applicable statute of limitations. Subsequently, both Appellees separately filed their third and final motions for summary judgment. The circuit court held a hearing and later entered an order on May 27, 2009, granting the third motions for summary judgment and HTE's motion to dismiss and to reconsider "on all grounds stated in the respective motions and briefs of GBI and HTE." The order further ruled that Appellant's "claims against all parties are fully dismissed with prejudice in their entirety. HTE's third-party claims against GBI are dismissed as moot in their entirety." Appellant now appeals the order granting summary judgment and presents three arguments for reversal.

## II. *Negligence Claim*

Appellant first contends that the circuit court erred in granting summary judgment on her negligence claim because it was timely brought under the North Carolina statute of repose for improvements to real property, section 1–50(a)(5). Appellant first advanced this argument after the circuit court granted partial summary judgment on the basis that her claim for products liability was barred by North Carolina's statute of repose for products-liability actions, section 1–50(a)(6). Appellees responded below, and on appeal, that Appellant's complaint, including the amendments asserting that the stacker was an improvement to real property, sounded in products liability and therefore the controlling statute of repose applicable in this case is the one for products liability, specifically section 1–50(a)(6).[1]

Thus, the parties disagree as to which of the two referenced North Carolina statutes of repose controls this case. The two statutes of repose are similar in scope except that section 1–50(a)(5) governing improvements to real property expressly exempts claims for fraud or willful and wanton misconduct from the scope of the statute. N.C. Gen.Stat. § 1–50(a)(5)(e); *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 444 S.E.2d 423, 427 (1994) (stating that "[t]he real property improvement statute of repose expressly exempts all claims sounding in fraud or willful and wanton misconduct, whereas the products-liability statute of repose contains no such exemption"). The parties also disagree as to the operative dates of the two respective statutes of repose. Appellees contend that the opera-

---

1. Section 1–50(a)(6) was repealed by North Carolina Session Laws 2009–420 and replaced with a twelve-year statute of repose for products liability effective October 1, 2009. Appellant does not argue that the new law should be applied retroactively, and indeed the North Carolina Court of Appeals has ruled that it is not to be applied retroactively. *Robinson v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 703 S.E.2d 883 (N.C.Ct.App.2011).

tive date for either statute of repose is December 7, 1998, as the date that the stacking machine was first placed in service and used for its intended purpose. Appellant argues that the earliest possible operative date is March 7, 1999, the date of satisfactory start-up or completion of performance under the terms of the contract of sale between Weyerhaeuser and HTE.

■ A statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue." *Black v. Littlejohn,* 312 N.C. 626, 325 S.E.2d 469, 475 (1985). Thus, the North Carolina courts have stated that a statute of repose is a condition precedent to the action itself, whereas a statute of limitation acts as a procedural bar to an action that has already accrued. *See Bolick v. Am. Barmag Corp.,* 306 N.C. 364, 293 S.E.2d 415 (1982). The issue of whether the statute of repose has expired is a question of law. *Chicopee, Inc. v. Sims Metal Works, Inc.,* 98 N.C.App. 423, 391 S.E.2d 211, 213 (1990). Summary judgment is proper if the pleadings or proof show without contradiction that the statute of repose has expired. *Bryant v. Don Galloway Homes, Inc.,* 147 N.C.App. 655, 556 S.E.2d 597 (2001).

Turning now to the central dispute over which statute of repose controls this case and the operative dates, we first consider the statute of repose for products-liability actions, which the circuit court relied upon when granting the first partial summary judgment. The North Carolina statute of repose for products liability provides that

[n]o action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of the initial purchase for use or consumption.

N.C. Gen.Stat. § 1–50(a)(6). Section 1–50(a)(6) is incorporated into North Carolina's products-liability statute at N.C. Gen.Stat. § 99B–1(3) (Repl.2009), which describes those actions to which section 1–50(a)(6) applies:

"Product liability action" includes any action brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging or labeling of any product.

■ The statute "is intended to be a substantive definition of rights which sets a fixed limit after the time of the product's manufacture beyond which the seller will not be held liable." *Bryant v. Adams,* 116 N.C.App. 448, 448 S.E.2d 832, 836 (1994). In essence, this statute gives the defendant a "vested right not to be sued" if the plaintiff fails to file within the six-year period. *Id.* at 835.

When considering this statute in a case against a manufacturer of a prefabricated fireplace that included claims for breach of implied and express warranties, failure to warn, and negligence in the design of the fireplace, the North Carolina Court of Appeals stated that "[t]he generality of the language in Section 1–50[a](6) indicates that the legislature intended to cover the multiplicity of claims that can arise out of a defective product." *Colony Hill Condo. I Ass'n v. Colony Co.,* 70 N.C.App. 390, 320 S.E.2d 273, 277 (1984); *see also Vogl v. LVD Corp.,* 132 N.C.App. 797, 514 S.E.2d 113 (1999) (holding that negligence claim against manufacturer falls within purview of products-liability statute of repose). In addition, a federal district court in North Carolina has cited the *Colony Hill* case for

the proposition that "[a]ll products-liability claims, regardless of their nature, are subject to this statute." *Nat'l Prop. Investors, VIII v. Shell Oil Co.,* 950 F.Supp. 710, 713 (E.D.N.C.1996).

In its order granting partial summary judgment pursuant to the products-liability statute of repose, the circuit court stated the following:

> In the instant case, the Court finds, as a matter of law, that the device which allegedly resulted in Plaintiff's injury, a lumber stacker, was in service and being operated on a full time basis as of December 7, 1998 and that the initial purchase for use or consumption as contemplated by the North Carolina statute of repose occurred on or before December 7, 1998. The court finds that, applying the North Carolina statute of repose, Plaintiff's claims were time barred as of December 7, 2004. Because the Plaintiff did not file the instant lawsuit until February 3, 2005, after expiration of the six year statute of repose, this claim is time barred and the Motion for Summary Judgment filed by Defendant Hi–Tech Engineering, Inc., and Third Party Defendant Gillingham Best, Inc., should be and is hereby granted.

Appellant relies heavily on the terms of the contract of sale relating to final acceptance and performance of the contract as determining the date of "initial purchase for use or consumption" for purposes of section 1–50(a)(6). In short, Appellant contends that the terms of the contract required *satisfactory* start-up rather than simply *initial* start-up and that the stacker could therefore not have been used for its intended purpose prior to the date of satisfactory start-up. Appellant contends that the date of satisfactory start-up was March 7, 1999, based on the following: (1) the terms of the contract requiring HTE to assist in the installation and start-up of the stacker and giving Weyerhaeuser the right to inspect and test the stacker before and after installation such that the stacker would "not be deemed accepted until after said final inspection"; (2) the deposition testimony that HTE's ordinary business procedure was to send an invoice within thirty days after completion of work; (3) the payment terms of the contract requiring the last 20% of the price to be paid 10% on start-up and the final 10% on satisfactory start-up; and (4) HTE's billing summary showing a date of April 6, 1999, as the date of the invoice from HTE to Weyerhaeuser for the final 10%. Thus, according to Appellant, this evidence supports a conclusion that final acceptance of the contract occurred sometime after March 7, 1999.

At the time the circuit court made its ruling with respect to the products-liability statute of repose, it had before it the deposition testimony of Steven Scott Hendricks, the unit manager of Weyerhaeuser's New Bern lumber facility at the time the stacker was purchased, stating that initial start-up of the stacker occurred during week 50 of 1998 or December 7, 1998, and that is when the stacker went into production. Mr. Hendricks acknowledged that production was slow at that date, but that Weyerhaeuser was satisfied with the stacker and continued to use the same stacker until after the year 2000.

The language of section 1–50(a)(6) is clear in that it contemplates "*initial* . . . use or consumption" as the operative date rather than the duty of complete performance under a contract. (Emphasis added.) The information before the circuit court clearly demonstrated that Weyerhaeuser's initial use of the stacker occurred on December 7, 1998. Accordingly, we find no error in the circuit court's conclusion that the complaint filed on February 3, 2005, was time-barred on December 7, 2004, ac-

cording to the products-liability statute of repose. Thus, if the products-liability statute of repose controls this case, then all of Appellant's claims are time-barred. *See Shell Oil Co.*, 950 F.Supp. 710.

■ We next consider the statute of repose that Appellant contends is controlling of this case, the North Carolina statute of repose for improvements to real property, section 1–50(a)(5)(a), which provides that

> [n]o action to recover damages based upon or arising out of the defective or unsafe condition of any improvement to real property shall be brought more than six years from the *later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.*

(Emphasis added.) The purpose of section 1–50(a)(5) is to protect from liability those persons who make improvements to real property. *Bryant*, 556 S.E.2d 597.

Appellant's argument that this statute controls this case hinges on three assertions. First, the installation of the lumber-stacking machine was an improvement to real property. Second, both Appellees are materialmen to which the statute applies. Third, the date of substantial completion *and* the last act or omission giving rise to the cause of action was March 7, 1999, or later, such that her claim filed on February 3, 2005, would be timely. Although these three assertions have been well developed by all parties, we need not decide whether the stacker is an improvement to real property or whether Appellees are materialmen, because we conclude, for the reasons expressed below, that the trigger date for the statute is December 7, 1998, which renders the complaint filed on February 3, 2005, untimely as outside the six-year period of repose.

■■ With respect to the trigger date for section 1–50(a)(5), Appellant has the burden of showing that she brought this action within six years of either (1) the substantial completion of the alleged improvement or (2) the specific last act or omission of Appellees giving rise to her cause of action. *See Nolan v. Paramount Homes, Inc.*, 135 N.C.App. 73, 518 S.E.2d 789 (1999). "Substantial completion" is defined by statute as

> that degree of completion of a project, improvement or specified area or portion thereof (in accordance with the contract, as modified by any change orders agreed to by the parties) upon attainment of which the owner can use the same for the purpose for which it was intended. The date of substantial completion may be established by written agreement.

N.C. Gen.Stat. § 1–50(a)(5)(c) (Repl.2009). Although the statute does not define "last act or omission," the North Carolina Court of Appeals has stated that "[i]n order to constitute a last act or omission, that act or omission must give rise to the cause of action." *Nolan*, 518 S.E.2d at 793. The plaintiff must establish a direct connection between the harm alleged and the last act or omission. *Id.*, 518 S.E.2d 789.

Just as she did with respect to her argument concerning the statute of repose for products-liability actions, Appellant relies heavily on the terms of the contract of sale relating to final acceptance and performance of the contract as determining the date of substantial completion for purposes of section 1–50(a)(5). In short, Appellant contends that the terms of the contract indicate that March 7, 1999, would be the operative date because the evidence shows that the machine was not operating properly or "for the purpose for which it was intended" until then. Appellant goes even further to suggest even later dates,

such as November 1999 and the spring of 2000, on which both Appellees made repairs and design modifications and on which the one-year warranty expired as constituting the "last act or omission ... giving rise to the cause of action." Appellant argues further still that the original design of the machine failed to incorporate industry safety standards and that the design modifications in November 1999 and the spring of 2000 also failed to incorporate such standards, thereby constituting the last omission giving rise to her negligence claim.

Appellees respond that the evidence was undisputed that the stacker was being used for "the purpose for which it was intended" on December 7, 1998. Therefore, according to the statutory definition, the lumber stacker was substantially complete on that date. Appellees respond further that while the statute provides that the date of substantial completion may be defined by contract, the contract at issue in the present case is silent with respect to substantial completion under the North Carolina statute and speaks only in terms of the duty of performance under the contract itself. Finally, Appellees respond that any alleged failure to design a machine in accordance with industry safety standards occurred and existed at the time the machine was designed rather than in the fall of 1999 and the spring of 2000 when Weyerhaeuser was doing work to improve the operational efficiency of the stacker.

■ Despite Appellant's assertions to the contrary, the law of North Carolina is that repairs, even those made pursuant to a warranty or a punch list after the date of substantial completion, do not toll or restart the running of the period of repose. *Whitehurst v. Hurst Built, Inc.*, 156 N.C.App. 650, 577 S.E.2d 168 (2003); *Nolan*, 518 S.E.2d 789. In addition, a duty to

complete performance of a contract may occur after the date of substantial completion of the improvement to real property. *Whitehurst*, 577 S.E.2d 168.

■ Assuming, without deciding, that the North Carolina statute of repose for improvements to real property applies to this case, and after carefully considering her arguments, we reject Appellant's contention that the operative date for the statute is anything other than December 7, 1998, which is the date of "substantial completion," or the date on which Weyerhaeuser used the machine "for the purpose for which it was intended." Appellant simply failed to demonstrate that any activities that occurred after that date interfered with or prevented Weyerhaeuser from using the stacker for the purpose for which it was intended. In addition, Appellant failed to demonstrate a direct connection between the harm alleged and the last acts or omissions alleged to have occurred after December 7, 1998. Therefore, December 7, 1998, is the operative date upon which the period of repose for improvements to real property began to run, and Appellant's negligence claim filed on February 3, 2005, is time-barred under that statute.

■ Appellant argues alternatively that if her claim is untimely under the statute of repose for improvements to real property, that statute does not operate to bar her negligence claim because Appellees may not assert the statute as a defense if they acted willfully or wantonly. The statute provides as follows:

The limitation prescribed by this subdivision shall not be asserted as a defense by any person who shall have been guilty of fraud, or willful or wanton negligence in furnishing materials, in developing real property, in performing or furnishing the design, plans, specifications, surveying, supervision, testing or

observation of construction, or construction of an improvement to real property, or a repair to an improvement to real property, or to a surety or guarantor of any of the foregoing persons, or to any person who shall wrongfully conceal any such fraud, or willful or wanton negligence.

N.C. Gen.Stat. § 1–50(a)(5)(e).

 Appellant argues that both Appellees acted willfully or wantonly by disregarding industry safety standards when designing the lumber-stacking machine. The North Carolina Supreme Court uses the terms "gross negligence" and "willful and wanton conduct" interchangeably to refer to conduct that is "somewhere between ordinary negligence and intentional conduct." *Yancey v. Lea*, 354 N.C. 48, 550 S.E.2d 155, 157 (2001). Under North Carolina law, "gross negligence" is defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others," and an act is said to be wanton "when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.*

To show that Appellees acted with gross negligence, Appellant relies upon the deposition testimony of Mr. Best, president of GBI, and Mr. Erskine, senior project engineer for HTE, in which both stated that they did not consult OSHA, ANSI, or any other safety or industry standards when they designed the machine, nor did they include any safety features in the design of the machine for employees to use to block out gravitational energy in the event of a jam, even though they admitted that it was foreseeable that people could be killed by the machine.

We agree with Appellees that this testimony, while perhaps indicative of ordinary negligence, does not rise to the level of willful, wanton, or intentional disregard for the safety of others as defined under North Carolina law. It simply does not demonstrate intentional wrongdoing or deliberate misconduct, as the North Carolina Court of Appeals has stated that a violation of a building code, standing alone, is insufficient to reach the somewhat elevated level of gross negligence or willful and wanton conduct. *Cacha v. Montaco, Inc.,* 147 N.C.App. 21, 554 S.E.2d 388 (2001). Accordingly, assuming without deciding that the statute of repose for improvements to real property applies, we find no merit to Appellant's argument that she presented evidence creating a disputed question of fact on the issue of willful or wanton conduct.

As we conclude our consideration of Appellant's first point for reversal, we note that we have determined that Appellant's claims are untimely under either statute of repose, and that we have not been cited to any case from a North Carolina appellate court directly addressing which of the two statutes would control upon facts similar to those in this case; therefore, we decline to make such a determination. It is simply not necessary to a resolution of this case, as we have addressed all of Appellant's arguments and concluded that her negligence claim was untimely under either statute of repose. The circuit court did not err in granting summary judgment as to the claim for negligence.

### III. *Gross–Negligence Claim or Willful and Wanton Conduct*

As her second point for reversal, Appellant contends that it was error for the circuit court to grant summary judgment on her claim for gross negligence because she produced evidence sufficient to create a factual question as to whether the lumber-stacking machine was designed and manufactured with an intentional disregard for the safety of others. Appellant

maintains that, for the same reasons argued in the previous point with respect to the exception to the statute of repose for improvements to real property for willful and wanton conduct, this is an independent ground for reversal of the summary judgment. We again reject this argument for the reasons previously stated. The evidence produced by Appellant in support of her claim of gross negligence falls short of what is required under North Carolina law to rise to the level of willful or wanton conduct. Accordingly, we find no merit to Appellant's assertion that this is an independent ground for reversal of the summary judgment.

### IV. Breach–of–Contract Claim— Third–Party Beneficiary

For her third point for reversal, Appellant contends that the circuit court erred in granting summary judgment on her claim for breach of contract because Appellant's decedent was a third-party beneficiary to the contract of purchase between Weyerhaeuser and HTE. The parties agree that Washington law governs any contract dispute because the contract contained a choice-of-law clause electing Washington law. Appellant argues that under Washington law, a plaintiff is considered a third-party beneficiary to a contract between two other parties, even when those two parties did not intend to benefit the plaintiff, if performance under the contract would necessarily and directly benefit the plaintiff. *See Lonsdale v. Chesterfield*, 99 Wash.2d 353, 662 P.2d 385 (1983). According to Appellant, she presented the deposition testimony of Steven Scott Hendricks, who was the unit manager of the Weyerhaeuser lumber facility at the time Weyerhaeuser purchased the stacking machine from HTE, to the effect that Weyerhaeuser's contract with HTE required the stacker to be in compliance with OSHA standards for the benefit of its employees.

Appellee GBI responds that Appellant has not made any allegation that GBI was a party to the contract between Weyerhaeuser and HTE. Appellee HTE responds that at the time it contracted with Weyerhaeuser it assumed no direct contractual obligation for the direct benefit of future Weyerhaeuser employees. HTE argues that Weyerhaeuser employees are not designated beneficiaries under the terms of the contract. In support of its argument that the requisite intent was lacking, HTE relies on the terms of the contract requiring compliance with Washington occupational-safety standards rather than North Carolina occupational-safety standards. The purpose of the contract's reference to Washington standards rather than to North Carolina standards, argues HTE, was to provide objective terms upon which inspection and testing pursuant to the contract could be performed. Similarly, HTE contends that the contract's reference to other governmental standards such as OSHA and the Federal Toxic Substance Control Act were intended for the benefit of preventing the levy of fines and violations against the contracting parties, rather than for the direct benefit of any future employees in North Carolina. While compliance with safety standards may have been an indirect or incidental benefit to the purchaser's employees, the employees were not the intended beneficiaries of the contract to purchase the machine.

We agree that Hendricks's deposition testimony falls short of creating a disputed factual question on the issue of whether Weyerhaeuser employees in North Carolina were intended third-party beneficiaries of the contract. The Washington courts have defined the intent required to create a third-party-beneficiary contract as an *"intent that the promisor shall assume*

a direct obligation to [the beneficiary]." *Lonsdale*, 662 P.2d at 390 (quoting *Vikingstad v. Baggott*, 46 Wash.2d 494, 282 P.2d 824, 826 (1955)). Even with Hendricks's testimony regarding the contract's reference to safety standards being for the benefit of employees, the fact remains undisputed that Weyerhaeuser, as the employer, was the party required to comply with worksite safety standards and therefore the contract's terms were for its benefit and not for the benefit of its employees. Appellant has pointed to no language in the contract whereby HTE purported to assume that obligation on behalf of Weyerhaeuser. Thus, the contract for purchase of this machine was for the direct benefit of the contracting parties, and not for the direct benefit of Weyerhaeuser employees.

As we have determined that Appellant's decedent was not an intended third-party beneficiary of the contract, we need not address Appellant's additional argument that her breach-of-contract claim had not expired under either Washington's six-year statute of limitations for contracts in writing or its four-year statute of limitations for the sale of goods.

In conclusion, the circuit court granted summary judgment to both Appellees on all of Appellant's claims. We have addressed the arguments Appellant raised on appeal as to her claims for negligence, gross negligence, and breach of contract. Because Appellant has not assigned any error on appeal as to her remaining claims, we consider them waived. *See Hunter v. Runyan*, 2011 Ark. 43, 382 S.W.3d 643. Accordingly, the order granting summary judgment to Appellees on all claims is affirmed.